[S. F. No. 1626.   Department One. — March 6, 1901.]

## STANDARD QUICKSILVER COMPANY, Appellant, *v.* ANNIE HABISHAW et al., Respondents.

PUBLIC LANDS — CHARACTER AS MINERAL OR AGRICULTURAL — PROVINCE OF LAND DEPARTMENT — CONCLUSIVE DECISION — HOMESTEAD PATENT. — It is the peculiar province of the land department of the United States, before issuing a patent to any land applied for, to determine, as a question of fact, the character of the land, as to whether it is valuable for minerals within the meaning of those terms, or agricultural land; and its determination that the land is agricultural, upon issuing a patent to a homestead settler, without reservation of mineral lands, is conclusive, as against a subsequent mineral claimant of any part of the patented land not known to be valuable for minerals at the date of the patent.

ID. — COLLATERAL ATTACK UPON PATENT — ABSENCE OF CONNECTION WITH PARAMOUNT TITLE. — Persons who, at the time of the issuance of a patent, were not connected in any manner with the paramount source of title, cannot make a collateral attack upon the patent upon any other ground than the want of jurisdiction in the department to dispose of the lands, and cannot assail the decision of the department upon any question of fact within its jurisdiction.

ID. — KNOWN MINES AT DATE OF PATENT — VALUE FOR MINERALS UNKNOWN. — Mines, at the date of the agricultural patent, upon the land patented, which were not known nor proved to be valuable for minerals at that date, and operations upon which were then presumably abandoned, and with the attempt at the opening of which, prior to the patent, subsequent mineral locators were not connected, were not reserved from the operation of the agricultural patent.

ID. — SHAFTS — SIGNS OF MINERAL — OUTCROPPINGS. — It is not enough that shafts were sunk in the ground, and that signs of mineral were found and were indicated by outcroppings at the surface, if no mineral was clearly found in such quantities and of such value as to show that the land was valuable for mining purposes at the date of the patent.

ID. — ADVERSE POSSESSION OF MINING CLAIM — PAYMENT OF TAXES. — An adverse possession of a mining claim upon patented land must fail of becoming a prescriptive title, where it appears that the patentee paid all taxes assessed upon the patented land, and that the only taxes paid by the mining claimants were upon their claim in a section not included in the patented lands. It is not enough that the claimants thought or supposed they were paying taxes upon their claim in the patented land.

NEW TRIAL — SPECIFICATIONS IN STATEMENT. — Specifications as to the insufficiency of the evidence, in a statement on motion for a new trial, pointing out the particular findings objected to as not supported by the evidence, cannot be objected to as not sufficient by the opposing party, where the statement recites that it "contains all the testimony which was offered by either party, and admitted in the case."

ID. — OBJECT OF SPECIFICATIONS — NOTICE TO OPPOSING PARTY — ACCOMPLISHMENT OF OBJECT. — The object of requiring specifications is to give notice to the opposing party of the grounds relied on for setting aside the decision. If, under the notice given, the opposing party has accomplished all which could be accomplished under any notice, he cannot object to any defect in the notice.

ID. — PROPOSED AMENDMENTS TO STATEMENT — NOTICE OF SETTLEMENT — RECORD — APPEARANCE. — If the record fails to show affirmatively that proposed amendments made to the statement were not all adopted, it does not appear that harm could have resulted from want of notice of the settlement of the statement; but where the record shows that the parties proposing the amendments appeared and objected to the settlement of the statement, it appears they had notice thereof, and they should then have presented all valid objections which they had to the settlement of the statement.

APPEAL from an order of the Superior Court of Lake County denying a new trial. R. W. Crump, Judge.

The facts are stated in the opinion of the court.

A. H. Ricketts, for Appellant.

W. T. Baggett, Dan Jones, T. J. Sheridan, R. J. Hudson, and Denson & De Haven, for Respondents.

THE COURT.—Action to quiet title. The case was tried before the court, findings filed, and judgment entered for defendants. Plaintiff made a motion for a new trial, and this appeal is from the order denying the motion.

The complaint alleges that the plaintiff is the owner, and seised in fee, and entitled to the possession, of lots numbered 1 and 2, the southwest quarter of the northwest quarter and the northeast quarter of the southwest quarter of section 23, township 10 north, range 7 west, Mount Diablo meridian, in Lake County; that defendants are in possession thereof, and claim some interest therein adverse to plaintiff. The answer disclaims any interest in or to any portion of the premises, except that part known as the "Bullion Quicksilver Mining Claim," which claim is described in the answer by metes and bounds. The answer denies that plaintiff is the owner or entitled to the possession of the said Bullion Quicksilver Mining Claim, or any part thereof; admits that defendants are in possession thereof under claim of title.

The answer further alleges that the cause of action, as to the mining claim, is barred by the provisions of sections 318 and 319 of the Code of Civil Procedure, and that defendants have procured title thereto by continuous adverse possession for more than nine years prior to the commencement of the action.

The court found that the plaintiff was not, at the time of the commencement of the action, nor at any other time, the owner, or in the possession or entitled to the possession, of the lands claimed in the answer, and that the defendants are, and were at all times named therein, the owners and entitled to the possession thereof. It further found that as to the lands claimed by defendants the plaintiff's cause of action was, and is, barred by the statute of limitations, and that defendants have procured title by adverse possession, as set forth in their answer. These findings are challenged as being without support in the evidence.

It appears from the evidence that on the tenth day of February, 1881, under the provisions of the act of Congress of May 20, 1862, entitled "An act to secure homesteads to actual settlers on the public domain," and the acts supplemental thereto, the United States issued to one Edward J. Bradford its patent for the lands described in the complaint; that the

title to said premises passed by mesne conveyances from said Bradford to plaintiff.

It is conceded by defendants that the record title apparently passed out of the government to the plaintiff, but it is claimed that the land described in the answer was, and is, mineral land, and chiefly valuable for its minerals, and that for this reason the land department had no right to dispose of it, and that no title passed out of the government by the patent. It is provided in the Revised Statutes of the United States, that, "in all cases, lands valuable for minerals shall be reserved from sale, except as otherwise expressly directed by law."

There is no provision of law for disposing of lands chiefly valuable for minerals to homestead settlers. But the question as to whether the land was mining land, or valuable for minerals, within the meaning of the terms, was one of fact, and which it was the peculiar province of the land department of the United States to determine before the patent was issued. As said by this court in *Wormouth* v. *Gardner*, 112 Cal. 510:—

"It is an established rule of law, that, upon the issuance of a patent by the United States, the decision of the land department upon all the facts necessary to the issuance of such patent is, in the absence of fraud, mistake, or imposition, conclusive."

It was said in *Cowell* v. *Lammers*, 21 Fed. Rep. 206, "There must be some point of time when the character of the land must be finally determined, and, for the interest of all concerned, there can be no better point to determine this question than at the time of issuing the patent."

The rule has been thoroughly discussed and adopted by this court in Bank, after a full review of the authorities, in *Gale* v. *Best*, 78 Cal. 235,[1] in which it is said:—

"The rule is well settled by numerous decisions of the supreme court of the United States, that when a law of Congress provides for the disposal and patenting of certain public lands upon the ascertainment of certain facts, the proper officers of the land department of the general government have jurisdiction to inquire into and determine those facts; that the issuance of a patent is an official declaration that such facts have been found in favor of the patentee, and that in such a case the patent is conclusive in a court of law, and

[1] 12 Am. St. Rep. 44.

cannot be attacked collaterally. . . . Our opinion is, that where a patent issues for public land, under a law which provides for its disposal as agricultural land,—either to a railroad company, or to pre-emption or homestead claimants,—and there is no reservation in the law except a general one of mineral lands, and no reservation at all in the patent, then the patent must be considered as a conclusive determination by the government that the land is agricultural; and afterward, in an action in a court of law, it is not competent to reopen the question of the character of the land. The opposite view would render the titles to a large region of California, now rapidly filling up with agricultural settlers, unstable, insecure, and almost worthless. It would affect, also, those holding through patents under the pre-emption and homestead laws; for mineral lands are exempted from the provisions of those laws. The theory of that view is, that if the land previously patented as agricultural can at any time be shown to be in fact mineral, then the title to it never passed from the United States, but it always remained a part of the public domain. . . . Such, in our opinion, is not the law."

That case has been approved and followed in *Dreyfus v. Badger*, 108 Cal. 66, and in *Klauber* v. *Higgins*, 117 Cal. 458. Those cases follow the rule laid down by the supreme court of the United States in numerous cases, among which are: *Steel* v. *St. Louis etc. Co.*, 106 U. S. 447; *Wright* v. *Roseberry*, 121 U. S. 488; *Davis* v. *Weibold*, 139 U. S. 529; *Burfenning* v. *Chicago etc. Ry. Co.*, 163 U. S. 323.

In this case the defendants have not attempted to connect themselves with the paramount source of title. They had no rights that could in any way be affected at the time the patent was issued, and it was therefore no concern of theirs as to whether or not the land was properly disposed of by the agents of the United States. The rule is well established, that in such case a patent cannot be collaterally attacked. (*Doll* v. *Meador*, 16 Cal. 325; *Durfee* v. *Plaisted*, 38 Cal. 83; *Smelting Company* v. *Kemp*, 104 U. S. 647; *Sparks* v. *Pierce*, 115 U.S. 408, 413.) In the latter case the rule is thus stated: "To entitle a party to relief against a patent of the government, he must show a better right to the land than the patentee, such as in law should have been respected by the officers of the land department, and being respected, would have given him the patent.

It is not sufficient to show that the patentee ought not to have received the patent. It must affirmatively appear that the claimant was entitled to it, and that, in consequence of erroneous rulings of those officers on the facts existing, it was denied to him." While the rule is that a patent of the United States cannot be collaterally impeached, there runs, through the decisions, a well-known exception, that if the department had no jurisdiction to dispose of the lands,—that is, if a patent be absolutely void upon its face, or were issued without authority, or were prohibited by statute, or if the lands had been reserved from sale, or dedicated to special purposes, the patent may be collaterally impeached,—that is, it may be shown by any one to be void. It is claimed by defendants that the lands described in the patent in this case contained "known mines," and that the patent was therefore, as to such mines, void, so that they can attack it collaterally. We have examined the cases cited, and do not think they support the contention of defendants. Among the principal cases relied upon is *Burfenning* v. *Chicago etc. Ry. Co.*, 163 U. S. 322. That case turned upon the point that the lands patented under the homestead laws to claimant were within the limits of the incorporated city of Minneapolis, and as the patent to such lands was expressly forbidden by statute, the patent was void. The decision is not in conflict with the rule we have stated. On the contrary, the court says: "It has undoubtedly been affirmed over and over again, that, in the administration of the public land system of the United States, questions of fact are for the consideration and judgment of the land department, and that its judgment thereon is final. Whether, for instance, a certain tract is swamp-land or not, mineral land or not, presents a question of fact not resting on record, dependent upon oral testimony; and it cannot be doubted that the decision of the land department, one way or the other, in reference to these questions, is conclusive, and not open to relitigation in the courts, except in those cases of fraud which permit any determination to be re-examined."

In *Reynolds* v. *Iron Silver Mining Co.*, 116 U. S. 687, plaintiff relied upon a patent for a placer mine, and the contested vein was within the lines of its superficial area extended perpendicularly. The statute on which the patent was issued declared that it should not confer any right to a vein known to exist within it at the time the grant was made, unless it was in-

cluded in the application for a patent. The opinion proceeded on the theory that the patentees obtained the patent with the knowledge, on their part, of the lode or vein, and with the intention of procuring title thereto in violation of the statute. The other cases cited are easily distinguished from the one at bar. Conceding the law to be, that if an applicant for a patent under the homestead laws knew, at the date of his application and patent, of valuable minerals in the land, his patent would convey no title to such mineral lands, the evidence in this case does not show such facts. The rule is, that the mine must not only be known, but known to be valuable at the date of the patent. (*Richards* v. *Dower*, 81 Cal. 51; *Deffeback* v. *Hawke*, 115 U.S. 392.)

It is said in *Colorado Coal Co.* v. *United States*, 123 U.S. 327, that no lands have been held to be "known mines," unless at the time the rights of the purchaser accrued there was upon the ground an actual and opened mine which had been worked or was capable of being worked, and in the opinion it is said:—

"We hold, therefore, that, to constitute the exemption contemplated by the pre-emption act under the head of 'known mines,' there should be upon the land ascertained coal deposits of such an extent and value as to make the land more valuable to be worked as a coal mine, under the conditions existing at the time, than for merely agricultural purposes."

The court, in finding 4, found the facts to be such as to bring this case within the rule of the above cases, except that it is not found that the patentee of the lands knew of any such mines. The finding is, that at the time of the issuance of the patent, and prior thereto, the lands "were known to be valuable mineral lands, and were known to be valuable for mining purposes, and were known to contain valuable cinnabar ledges, and were known to be more valuable for mining than for agricultural purposes, and that upon said land there existed known mines of value, and were profitably held, possessed, worked, and mined as such."

This finding is not supported by the evidence. The appellant has pointed out all the particular portions of the evidence bearing upon the finding, and it is not necessary to examine it in detail here. It shows that from 1874 to 1881 a prospect hole or shaft was sunk to a depth of about seventy feet, — an average of about ten feet a year; that an open cut and tunnel

about one hundred feet in length, with its end or face some fifteen or ten feet in depth from the surface, were run, and a small cut ten or fifteen feet in length and about five or six feet wide was run and a small shaft or hole was sunk to a depth of about ten feet to the end of this cut; that this work was done as annual assessment-work, and was easily done and at no great expense; that the seventy-foot shaft developed a streak of cinnabar ore, varying in width, according to the statement of different witnesses, from two inches to three feet wide, of an average value of two and a half to five per cent. The evidence entirely fails to show that the mine was valuable, or that it would pay for working it. There were some two or three of these mining claims, — one called the "Kingston," and one the "Cliff Arch," and one the "Great Eastern."

It does not appear that these defendants, or either of them, were in any way connected with said attempted mining, neither does it appear that the parties then connected with the mining operations continued them, or conveyed their interests in any way to defendants. We may presume that they abandoned operations. Defendant's counsel have attempted to point out evidence to sustain the finding, but it is not sufficient. The witness Dunham testified: "I believe that it would be profitable to mine. I can go that far, and that is as far as I can go, because I cannot go inside of the mountain, any more than anybody else."

The witness Nickerson testified that when he knew the mine or shaft "there was mineral in sight and in the croppings. It was in the croppings, but there was no body of ore exposed, — no large body." This witness further said that he had a conversation with Bradford, the patentee, after he had entered the land, and that in the conversation Bradford said "he considered the land more valuable for agricultural than mineral; . . . that the company had not developed any large body of mineral."

The witness Smith testified "that he saw quicksilver in the shaft; it was a stratum of ore a foot or two wide, which could be traced from the top to the bottom of the shaft. They were taking out ore and throwing it on the dump there, and waste rock." The witness Rocca testified: "I saw cinnabar on the northwest corner of the shaft. . . . There was only that streak you know, and that streak would vary from two or three inches to a foot from the top down to the bottom as far as I

went. . . . For mining I should think it worth prospecting, and I think it is worth something."

We have thus noticed all the evidence pointed out by defendants in support of their claim of "known mines." No evidence was adduced showing the production of any cinnabar of commercial value in any amount sufficient to make the mines valuable, or showing the product per ton.

It is not enough that shafts were sunk in the ground and signs of mineral found. Neither is it sufficient that there may have been some indications by outcroppings on the surface. The mineral must be clearly found, and be in such quantities and of such value as to show that the land was valuable for mining purposes at the date of the patent. (*Richards* v. *Dower*, 81 Cal. 54; *Iron Silver Co.* v. *Mike and Starr Co.*, 143 U.S. 404.)

In the language of Judge Field in *The Eureka Case*, 4 Saw. 320, "A patent of the United States for land, whether agricultural or mineral, is something upon which its holder can rely for peace and security in his possessions. In its potency it is ironclad against all *mere speculative inferences.*"

It is claimed by defendants that they have procured title to the lands described in their answer by adverse possession; and the court so found, but the evidence does not sustain the finding. It is not necessary to decide as to whether or not a notice of location of a mine made by defendants as trespassers upon the lands of plaintiff, and filed for record by them in the recorder's office, is a written instrument within the meaning of section 322 of the Code of Civil Procedure. The language of the code is: "Entered into the possession of the property under claim of title, . . . founding such claim upon a written instrument, as being a conveyance of the property in question." To comply with the above provision, the defendants must have entered into possession under the "notice of location," and the notice must have purported, at least, to be a conveyance of the property. But the claim of adverse possession must fail, for the reason that defendants have not proven that they, or their predecessors and grantors, have paid all the taxes which have been levied or assessed upon the land. (Code Civ. Proc., sec. 325.) The complaint describes the lands as being in section 23, township 10 north, range 7 west.

The assessments and receipts offered in evidence by defendants are to the "Bullion Quicksilver Mining Co.," and of the "Bullion Quicksilver Mining Claim, Sec. 22, Twp. 10 N., R.

7 W." The receipts do not describe any land, and they clearly show that the payments and assessments were on a claim in section 22. It is not sufficient that defendants thought or supposed they were paying taxes on lands in section 23. (*Reynolds* v. *Willard*, 80 Cal. 608.)

The evidence further shows that the lands described in the complaint were assessed to plaintiff by correct description, and the taxes paid for each of the years during the time defendants claim to have been in adverse possession. (*Carpenter* v. *Lewis*, 119 Cal. 18.)

While the payment of the taxes by the plaintiff added nothing to its title, it excludes any presumption that the taxes were assessed to or paid by defendants. (*Baldwin* v. *Temple*, 101 Cal. 402.)

The specifications as to the insufficiency of the evidence to sustain the findings were sufficient. The particular findings objected to are pointed out, and attention is called by the plaintiff to its claim that neither of these findings is supported by the evidence. The purpose of the statute in requiring such specifications is, as has been frequently said, that the opposing party may propose amendments to the statement, and thus cause it to contain all the evidence in support of the decision which he may deem pertinent or relevant thereto; but where, as in the present case, the statement recites that it "contains all the testimony which was offered by either party and admitted in the case," the respondent has no ground for saying that if the particulars had been more specifically pointed out, he might have caused it to appear that there was additional evidence in support of the decision. The object of requiring any specification is to give notice to the opposing party of the grounds relied on for setting aside the decision; but if, under the notice which is given, the respondent has accomplished all which could have been accomplished under any notice, he is not in a position to object to any defect in the notice.

The claim that defendants Hudson and Parsons had no notice of the time and place of settlement of the statement on motion for a new trial is without merit. They proposed amendments to the proposed statement, and the record fails to show that the said amendments were not all adopted. If so, no harm could have resulted from want of notice. It further appears that they had notice, for they appeared and filed objections to the statement being settled and signed by the judge,

for the reason that plaintiff had not used diligence in "presenting, obtaining the settlement of, engrossing, or filing the said statement." These objections were heard and argued in court on the eleventh day of May, 1898, and the statement was not settled and allowed until the 24th of May, 1898. If defendants had any valid objections to the settlement of the statement, they should have presented them all at the same time.

The order is reversed.