[L. A. No. 1155. In Bank.—November 30, 1903.]

JOHN S. BELL, Respondent, v. GEORGE STAACKE et al., Appellants.

NEW TRIAL—NOTICE OF INTENTION NOT PREMATURE—SUPPLY OF FINDINGS OMITTED.—A notice of intention of the defendants to move for a new trial is not rendered premature by the supply of omitted findings by the judge upon his own motion, which were in no way connected with the findings upon which the decree in favor of the plaintiff was founded, and are not questioned by either party.

ID.—SPECIFICATIONS OF INSUFFICIENCY OF EVIDENCE—FINDINGS OF PROBATIVE FACTS.—Where probative facts are found by the court, specifications of insufficiency of the evidence to sustain any one of such findings, or any particular contained therein, are sufficient.

ID.—FINDING OF ULTIMATE FACT.—Where the finding is of an ultimate fact, consisting of a conclusion from a number of probative facts, a specification as to the insufficiency of the evidence to sustain such finding is insufficient. [*Per* Lorigan, J., and McFarland, J., Shaw, J., Angellotti, J., and Henshaw, J., *contra.*]

ID.—TRUST—ENFORCEMENT—ADVANCES BY DECEDENT—SECURITY—FINDINGS AGAINST EVIDENCE.—In an action to enforce a trust, one of the purposes of which was that the trustee should hold the title for the plaintiff, where it appeared from the evidence, without substantial conflict, that the deceased uncle of the plaintiff had advanced large sums of money for plaintiff's benefit, for which plaintiff was

indebted to him, and that it was the understanding of the parties that the title was held by the trustee also as security to the uncle for the amount of such advances; findings that the trustee held the title in trust only to convey to the plaintiff, and not as security for plaintiff's indebtedness to the estate of the deceased uncle, were against the evidence.

ID.—PRACTICAL CONSTRUCTION OF CONTRACT—ACTS AND CONDUCT OF PARTIES.—Where the acts and conduct of the parties up to the time of the uncle's death, and a sworn statement of the plaintiff in his original complaint, all tended to show that the trust deed to the land was in lieu of antecedent notes and mortgage held by the uncle as security, and that the deed was intended by the parties as security for the indebtedness then due and to become due from the plaintiff to the uncle for further advances, such acts and conduct of the parties show a contemporaneous and practical construction of the contract which must prevail over the subsequent testimony of plaintiff to the contrary.

ID.—WRITTEN AGREEMENT AS TO NOTES AND MORTGAGES—CHANGE OF SECURITY.—Where a written agreement was made by which notes and a mortgage given upon the sale of land by the plaintiff, were pledged by him to the uncle as security for indebtedness, and the security was changed into land by consent of the parties, in lieu of the notes and mortgages, the land became subject to such written agreement; and the rights of the uncle in the trust property are evidenced thereby.

ID.—ESTOPPEL OF PLAINTIFF.—Where the plaintiff knew that the title was held in the name of his uncle's confidential clerk, and that the uncle claimed the title as security, and upon faith of such security received the advances made by the uncle, and though informed repeatedly that the uncle was making advances on the property, and never by word or act repudiated the uncle's claim, but insisted on the advances being made, he will be held to the agreement as thus understood and acquiesced in by him, and believed to exist when he presented his claim against his uncle's estate, and when he commenced the action.

ID.—EVIDENCE PROPERLY EXCLUDED—DECLARATIONS OUT OF PLAINTIFF'S HEARING—LETTER OF TRUSTEE.—Declarations made by the uncle and his attorney subsequent to the execution of the deed, out of the hearing of the plaintiff, or of any agent representing him, and a private letter of the trustee written after the uncle's death, which plaintiff had never seen or known of, were properly excluded from evidence.

APPEAL from an order of the Superior Court of Santa Barbara County denying a new trial. W. S. Day, Judge.

The facts are stated in the opinion of the court.

T. Z. Blakeman, and D. M. Delmas, for Theresa Bell, Administratrix, Appellant.

The findings are against the evidence, and the specifications are sufficient. (*Strang* v. *Ryan*, 46 Cal. 33; *American Type Founders' Assn.* v. *Packer*, 130 Cal. 460; *Owen* v. *Pomona Land etc. Co.*, 131 Cal. 530; *Standard Quicksilver Co.* v. *Habishaw*, 132 Cal. 124.) A trust resulted in favor of Thomas Bell. (Civ. Code, sec. 853; *Millard* v. *Hathaway*, 27 Cal. 119; *Curry* v. *Allen*, 34 Cal. 254; *Davis* v. *Baugh*, 59 Cal. 568; *Somers* v. *Overhulser*, 67 Cal. 237; *Murphy* v. *Clayton*, 113 Cal. 153; *Polk* v. *Boggs*, 122 Cal. 114.)

Canfield & Starbuck, for George Staacke, Appellant.

The evidence establishes that the land was held by Thomas Bell as security for money advanced to plaintiff by Thomas Bell, and the land was held subject to the written agreement of August 27, 1887, as a substituted security, resulting to Thomas Bell, who had paid the consideration in money. (*Roach* v. *Caraffa*, 85 Cal. 436, 446; *Barker* v. *Hurley*, 132 Cal. 21, 28.)

Richards & Carrier, and James L. Crittenden, for Respondent.

The findings were supported by evidence in their favor, and this court will not disturb findings where the evidence conflicts. (*Sherman* v. *Sandell*, 106 Cal. 375; *Brison* v. *Brison*, 90 Cal. 334; *Moore* v. *Douglas*, 132 Cal. 399, 401; *Gilbert* v. *Penfield*, 124 Cal. 237; *Broder* v. *Conklin*, 121 Cal. 222; *Chapman* v. *Neary*, 115 Cal. 79; *Johnston* v. *Brown*, 115 Cal. 694; *Ellert* v. *Coggswell*, 113 Cal. 129; *Loui Soy Wing* v. *Chung Yick*, 113 Cal. 310; *Guild Gold Min. Co.* v. *Mason*, 115 Cal. 95; *Senior* v. *Anderson*, 115 Cal. 496; *Bushnell* v. *Simpson*, 119 Cal. 658; *Brown* v. *San Francisco Sav. Union*, 122 Cal. 648; *Chico Bridge Co.* v. *Sacramento T. Co.*, 123 Cal. 178; *Shafer* v. *Willis*, 124 Cal. 36.)

LORIGAN, J.—Plaintiff brought this action to have a trust declared in his favor against the defendant Staacke in ten thousand acres of land in Santa Barbara County, the title to which stood of record in the name of the latter, and to com-

pel a conveyance thereof to him by Staacke. The defendants, Staacke individually, and Theresa Bell, as executrix of the estate of Thomas Bell, deceased, by answer and cross-complaint, set up that said lands were held by said Staacke, subject to a trust in favor of the estate of said Thomas Bell, for certain advances made by said Thomas Bell in his lifetime, at the instance and for the benefit of plaintiff, and prayed that this latter trust be declared superior to that asserted by plaintiff.

The trial court decreed that the land was held by Staacke in trust solely for plaintiff, and was not subject to any trust in favor of the estate of Thomas Bell, and directed a conveyance by defendant Staacke to plaintiff. The court, however, under the cross-complaint, awarded the administratrix of said estate of Thomas Bell a judgment against the plaintiff personally for some fifty-two thousand dollars, as a balance due by plaintiff for money advanced and loaned him by Thomas Bell, prior to the death of the latter on October 16, 1892.

Defendants appealed from that portion of the decree determining that said land was not subject to any trust in favor of the estate of Thomas Bell, and also from an order denying their motion for a new trial.

The appeal from the judgment was dismissed by this court (*Bell* v. *Staacke,* 137 Cal. 307), and the order affirmed, the Department decision holding, with regard to the latter, that as to the specifications of alleged insufficiency of evidence to justify the findings complained of therein, they were not properly made and could not be considered. A rehearing was granted on this point, and the appeal from the order is again before us generally for consideration.

It is insisted, preliminarily, by counsel for respondent that the motion for a new trial was properly denied by the lower court, and that the appeal from such order should be affirmed by this court because, he claims, the notice of intention to move for a new trial was prematurely given. There is nothing in this point. The findings and conclusions of law were filed March 6, 1901, in due time, and on March 19, 1901, defendants gave their notice of intention to move for a new trial. Some two months afterwards the judge of the lower court, on his own motion, and reciting that such findings had

been inadvertently omitted, made and filed two additional findings upon two issues raised by the plaintiff's answer to defendants' cross-complaint. They were findings in favor of the defendant Theresa Bell, as administratrix, that the indebtedness of plaintiff to Thomas Bell contained no illegal charges, and that no indebtedness in favor of plaintiff against Thomas Bell, or his estate, ever existed. These were in no way connected with the findings upon which the decree in favor of plaintiff was founded, and neither party attacks them, nor has either party appealed from, or questioned, this part of the decree.

The motion for a new trial was based, among other grounds, upon the insufficiency of the evidence to justify some nineteen, out of twenty-three, findings made by the lower court, and whether they were so justified is the main point to be considered on this appeal. Counsel for respondent contend, again preliminarily, that as far as these challenged findings are concerned, this court cannot review them, because he insists the specifications of insufficiency of the evidence to justify each of them does not point out the particulars in which the evidence so fails to support them, or any of them, and hence are fatally defective in that respect, and relies upon *De Molera* v. *Martin,* 120 Cal. 547; *Rauer* v. *Fay,* 128 Cal. 523; *Taylor* v. *Bell,* 128 Cal. 308, and kindred cases, in support of this point.

These cases, however, have no application to the findings and specifications under consideration. The findings which were attacked in those cases, and specifications pointing to which were declared insufficient, were findings of *ultimate facts,* and it was held that a general specification that the evidence did not justify such a finding was insufficient. The findings which are challenged in the case at bar are findings of *probative* facts, and not *ultimate* facts, and it is this difference which makes the cited cases inapplicable. Here the lower court made full findings on all the probative facts, and almost every one of them is directly attacked by appellants in particular specifications; in many instances they do not attack the entire finding, but cut out some specific probative fact contained therein, and essentially necessary to be sustained by the evidence, and specify that it is not so sustained. This was all that was necessary, and is the correct practice.

The rule in this regard is, that where the fact found by the court is the conclusion from a number of probative facts—an ultimate fact—a specification which only says that the finding of this ultimate fact is not sustained by the evidence is insufficient; but where the findings consist of particular probative facts—a series of facts from which the ultimate fact in issue is to be found—the specification is sufficient if it is leveled directly against any of such particular probative facts thus found, or the particular finding contained in the same.

This is the rule, as we understand it, laid down in *De Molera* v. *Martin,* 120 Cal. 547, cited by counsel for respondent, and which case seems to be the authority most generally relied on in attacks upon the sufficiency of specifications to findings. That was an action in ejectment, and the court found on one single proposition—the ultimate fact—ownership of the land by plaintiff. On appeal this court held that a specification that the evidence was insufficient to justify such finding of ownership was bad, because it was simply a repetition of the ground designated in the notice of intention to move for a new trial, and not a specification of the particulars in which the evidence was insufficient, and in discussing the subject the court said: "If a finding is of an ultimate fact, which results from the establishment of several probative facts, these probative facts constitute the particulars from which the ultimate fact is drawn, and, if it is claimed that the evidence is insufficient to establish any of these probative facts, the particulars of such insufficiency should be specified in the statement. In *Kelly* v. *Mack,* 49 Cal. 523, an action brought to enforce a vendor's lien, it was held that the specification 'the evidence is insufficient to show that plaintiff has a vendor's lien upon the land,' failed to comply with the statute, for the reason, that it was merely an averment in effect, that the cause of action set forth in the complaint was not sustained by the evidence. In the same case it was held that a specification that 'the evidence is insufficient to show that the plaintiff was the owner of the land at the time of sale,' was a sufficient specification of the particular in which the evidence failed to support the decision, since ownership of the land was one of the probative facts essential to entitle the

plaintiff to a vendor's lien." Further on, but with reference to the case then under consideration, the court continued: "The finding of the court that the plaintiff was the owner and entitled to the possession of the land was upon a consideration of all the evidence offered in support of her claim of ownership. This involved a consideration of the several particulars by which her ownership was to be established. Ownership, when regarded as a fact rather than as a conclusion of law, as in the finding herein, is the ultimate fact resulting from several probative facts to which the evidence in the case is directed. If the evidence is insufficient to sustain any of these probative facts, the particular facts which are not sustained by the evidence should be specified."

From this authority itself, we think the rule is deducible, as we have stated it, that where probative facts are found by the court it is only necessary in questioning the sufficiency of the evidence to support them to call attention to the particular fact as found and challenge its support under evidence.

This is the view taken in the early case of *Strang* v. *Ryan*, 46 Cal. 41. This was also an action in ejectment. There the lower court made findings of a number of probative facts. On appeal from an order denying a new trial it was objected "that the statement on motion for a new trial contained no sufficient specification of the particulars wherein the evidence does not justify the findings and judgment. In overruling this objection the court said: "The first, second, third, fourth, sixth, seventh, eighth, and thirteenth specifications are certainly not obnoxious to this objection. *Each of them specifies a particular fact found by the court which it is alleged was not supported by the evidence,* and, in respect to all the remaining specifications, *each of them points to a separate specific finding confined to one or two facts, and avers that it was not justified by the evidence.* We think this was a sufficient specification under section 195 of the Practice Act." To the same effect are *Knott* v. *Peden,* 84 Cal. 299, and *Dawson* v. *Schloss,* 93 Cal. 200.

In the still later cases of *American Type Founders' Co.* v. *Packer,* 130 Cal. 460; *Owen* v. *Pomona L. and W. Co.,* 131 Cal. 530, and *Standard Quicksilver Co.* v. *Habishaw,*

132 Cal. 124, the same rule is declared, if not broader, where the finding of a probative fact, or a special finding, is attacked. The record in these latter cases shows that, as here, the findings challenged were findings of probative facts, and the specification as to each was simply that, as here, "the evidence was insufficient to justify the finding," followed by a recital of the particular finding, or part of the findings challenged.

In the first case the court held such a specification sufficient.

In the second case the court in Bank said (*Owen* v. *Pomona L. and W. Co.*, 131 Cal. 530) : "With regard to these specifications the respondent makes the objection that they are not sufficient in substance or proper in form, and to this point cites the case of *De Molera* v. *Martin,* 120 Cal. 544. But the decision in that case has no application to the specifications here, which are as exact and detailed as they could be made in pointing out the particular findings and parts of findings, which it is claimed the evidence does not justify."

In the last case (*Standard Quicksilver Co.* v. *Habishaw,* 132 Cal. 124), the following language is used: "The specifications as to the sufficiency of the evidence to sustain the findings were sufficient. The particular findings objected to are pointed out, and attention is called by the plaintiff to its claim that neither of these findings is supported by the evidence."

It is further said in that case: "The purpose of the statute in requiring such specification is, as has been frequently said, that the opposing party may propose amendments to the statement, and thus cause it to contain all the evidence in support of the decision which he may deem pertinent, or relevant thereto . . . The object of requiring any specifications is to give notice to the opposing party of the grounds relied on for setting aside the decision; but if, under the notice which is given, the respondent has accomplished all which could have been accomplished under any notice, he is not in a position to object to any defect in the notice."

The specifications here, tested under any rule, gave the respondent all the notice necessary to advise him of the ground relied on; the facts found were pointed out, and he was noti-

CXLI. Cal.—13

fied that the appellant claimed that these special facts and special findings were not sustained by the evidence. The only object of a specification is to directly call the attention of the opposing party to the point upon which it is claimed that the evidence is insufficient. It is an easy matter for a respondent, if a proposed statement does not contain all the evidence as to any of the challenged findings, to have any evidence which he deems omitted and pertinent incorporated in the statement.

The rule laid down in *De Molera* v. *Martin*, 120 Cal. 544, if it was once capable of the stringent construction placed on it by successive respondents in appeals to this court, is now being relaxed in harmony with the more liberal view which will afford a hearing upon appeal where reasonable and ordinarily careful precautions have been taken to present specifications, rather than to defeat the right to be heard upon purely technical grounds. In this line are *Stuart* v. *Lord*, 138 Cal. 672; *Drathman* v. *Cohen*, 139 Cal. 310; and *Holmes* v. *Hoppe*, 140 Cal. 212.

If there is any intimation in decisions of this court, prior to these cases, in seeming conflict with this rule, it must give way to the clear expression of the rule upon this point, announced in these latter cases, and under these latter decisions. At least as far as the specifications in the case at bar are addressed to particular probative facts appearing in the findings, and to special findings thereunder, they are legally sufficient and correct, and the points made under them are properly before this court for consideration.

We proceed now to examine the sufficiency of these findings in the light of the evidence. Space will not permit of our setting them all forth *in extenso*, nor is it necessary to refer to all of them, even in a general way; an epitomization of a few of the main essential ones will be all that is necessary, because the insufficiency of the evidence to justify them is of the pith of the inquiry.

Neither have we made any preliminary statement of the facts, because in the reference which we shall make to the evidence, in examining the findings, an intelligent, though general history of the case will be found.

Among other findings challenged are those which find that

when Grover and Rosener made the conveyance of March 7, 1889, to Staacke (under which it is claimed that the trust was created) the grantors and plaintiff and Thomas Bell agreed that such deed should convey back to plaintiff the ten thousand acres of land in controversy, and that it was agreed between plaintiff and Thomas Bell that such conveyance should reconvey it to plaintiff according to his original title, such reconveyance to be made through the defendant Staacke.

And also the finding that it was not agreed by plaintiff, Thomas Bell, and Staacke, or either of them, at the time of the execution of such deed of March 7, 1889, that said Staacke should hold said ten thousand acres of land as security for the payment by plaintiff to said Thomas Bell of all sums of money theretofore, or thereafter, to be advanced to plaintiff by said Thomas Bell.

After a careful consideration of the evidence in the case we are satisfied that these findings, which are the main controlling ones in the case in favor of plaintiff, are not sustained by the evidence.

There is no question but that the premises were conveyed to Staacke, as trustee, by deed of March 7, 1889, and that the trustee claims no interest therein. There is no question as to the further fact, and the court so finds, that the plaintiff is indebted to the estate of Thomas Bell in the amount of over fifty-two thousand dollars. It is admitted that one of the purposes of the trust was to hold the title for plaintiff —of this there is no dispute on either side—but the question is, and was, as to whether or not the trustee also holds the title as security for the amount due by plaintiff to the estate of Thomas Bell. This is the controlling question in the case. The court below, in its opinion, said: "But all direct testimony on the material points, except that of plaintiff, is noticeably absent, and the letters, conversations, and acts of all the parties are as consistent with one theory as the other . . . The testimony of John S. Bell, the plaintiff, while if contradicted or inconsistent with the circumstances, would be of much less value than that of a disinterested witness, is still entitled to due consideration, and, where totally uncontradicted, reasonable and consistent

with all other facts, should be sufficient upon which to base a finding."

The court, therefore, appears to have placed considerable, if not main stress upon the fact, that plaintiff was not contradicted as to certain statements concerning the purposes and objects of the trust. While the evidence is too voluminous to be discussed in detail, it is necessary to state a few salient features of it, in order to show the reasons which have impelled us to arrive at a conclusion different from that of the trial court. The plaintiff is a nephew of Thomas Bell, deceased, who, during his lifetime, looked after plaintiff and his family—the plaintiff residing in Santa Barbara, Thomas Bell in San Francisco—and showed much affection and solicitude for them, and expended large sums of money each year for their maintenance. Plaintiff was improvident, showed no business ability, and was always dependent upon his deceased uncle for his support. As early as 1874 deceased gave and conveyed to plaintiff a tract of land containing fourteen thousand acres, being the four-thousand-acre tract and the ten-thousand-acre tract described in the amended complaint, situate in one body in the northern portion of Santa Barbara County. Plaintiff failed to support himself and family from the income of the land, but deceased, from time to time, made loans and advances to him until, in the year 1885, the indebtedness of plaintiff to deceased amounted to fifty thousand dollars. They then had a settlement, and plaintiff, in payment of said indebtedness conveyed to deceased four thousand acres from the tract, which was thereafter known as the "four-thousand-acre tract," retaining the balance, which was thereafter known as the "ten-thousand-acre tract." On the twenty-third day of August, 1887, the plaintiff and deceased made a sale of both tracts of land to one Grover, for three hundred and fifty thousand dollars, one fifth of which was paid in cash. The four-thousand-acre tract of deceased went into the sale at eighty thousand dollars, and the ten-thousand-acre tract of plaintiff at two hundred and seventy thousand dollars. The deferred payments for Thomas Bell's tracts were evidenced by four promissory notes of Grover, each for sixteen thousand dollars, payable to Thomas Bell, and

secured by mortgage on the four thousand acres. The deferred payments for plaintiff's tract were evidenced by four promissory notes for fifty-four thousand dollars each by Grover, payable to Thomas Bell, and secured by mortgage on the ten-thousand-acre tract. At the time of this sale plaintiff had become again largely indebted to Thomas Bell, and by a verbal agreement the cash payments, the notes for the deferred payments on the ten-thousand-acre tract, and the mortgage to secure the same, were made direct to Thomas Bell, plaintiff's portion of the cash being credited on his indebtedness, leaving the balance still due and owing by plaintiff to Thomas Bell of $25,529. Four days after this sale plaintiff and Thomas Bell entered into a written agreement with each other, which, after reciting the facts as to the sale, the cash payment and its application, the giving of the notes and mortgage, and the balance of $25,529, still due Thomas Bell, provided ''that Thomas Bell should hold said notes and mortgage for $216,000 until he should be repaid all present and future loans and advances which he might see fit to make to said John S. Bell, with interest from date of making the same, after which he should on demand assign the same to said John S. Bell.'' There is no doubt as to what the parties intended up to the time of this written agreement, and as to what was intended by it. The acts, conduct, and writings, up to this time, clearly show that Thomas Bell was to hold the notes and mortgage of Grover, given for the purchase price of plaintiff's land, as security for all sums due from, and to be advanced to him. They are not consistent with any other or different theory, nor did the parties differ up to this time as to the understanding and agreement. It was expressed that Thomas Bell should hold the evidence of indebtedness for the balance due plaintiff, on account of the sale of his land, in trust to secure all indebtedness due and to become due by plaintiff. Upon the faith and strength of this arrangement, the deceased continued to make advances and to support plaintiff and his family, although constantly advising plaintiff to be more careful in his expenditures.

After the purchase by Grover, he conveyed an interest in the premises, subject, of course, to the mortgages, to one

Rosener. Grover and Rosener were unable to make payments as provided in the notes and mortgages, and Thomas Bell commenced suits to foreclose. While the foreclosure suits were pending, the plaintiff and Thomas Bell orally agreed with Grover and Rosener that, in consideration of a proper deed of conveyance of the premises, they would release Rosener from the obligations of said notes and mortgages. In pursuance of this agreement a deed was accordingly made to Staacke, the confidential clerk of Thomas Bell, on the seventh day of March, 1889, which is the conveyance now in question. In consideration of this deed of grant to Staacke, Thomas Bell delivered to said Grover all said notes and mortgages, released the mortgages of record, and dismissed the suits of foreclosure. Grover and Rosener in making the deed to Staacke acted with the consent, and at the request, of both plaintiff and Thomas Bell. In fact, the consent of plaintiff would not appear to have been necessary, as Thomas Bell held the legal title and the possession of the property which (the notes and mortgage) constituted the consideration for the deed. No suggestion was made by plaintiff that the deed was to free his land from the lien of Thomas Bell for indebtedness and for further advances. Let us see, then, from the acts and conduct of the parties, their interpretation and understanding of the trust. Grover and Rosener, after making the deed, immediately delivered possession of the property to Staacke. Plaintiff made no objection to the surrender of possession to Staacke, and one Hathaway was employed as superintendent of both tracts in common. As such superintendent he managed the property and remained in possession until October 14, 1892, and accounted regularly to Thomas Bell during all this time for the rents and profits of both tracts, the accounts of the two tracts being kept separately. Thomas Bell continued to make advances to plaintiff as he had done before, and credited the net proceeds of the rents from the ten-thousand-acre tract to plaintiff. In the correspondence between the parties after the deed to Staacke, Thomas Bell often referred to the ten-thousand-acre tract as belonging to plaintiff, and as being held as security for the indebtedness to him. Although plaintiff wrote to Thomas Bell frequently, it

does not appear that he ever objected to or denied the claims or statements of Thomas Bell as to the land being held as security. Thomas Bell rendered yearly to plaintiff a statement of his account, giving credit for the rents and profits of plaintiff's land, and charging him with expenses, taxes, and moneys loaned, which statements were always acknowledged by plaintiff in writing to be correct. The balance was always largely in favor of Thomas Bell, and continually increased. As a sample of the letters of Thomas Bell to plaintiff, showing the understanding that the land was held as security, a few extracts may be given. In a letter dated March 27, 1889, written after the date of the deed from Grover and Rosener to Staacke, and while some negotiations were pending as to granting Rosener an option to purchase the land, Thomas Bell said: "You must try to curtail these heavy expenses; you will soon owe me more than the 10,000 acres are worth in my opinion. If we had the matter arranged with Rosener, the 10,000 acres could be deeded to you, and you could borrow fifty or sixty thousand on it to pay me," clearly indicative of the fact that a conveyance to John Bell would only be permitted on condition that he should, by mortgaging it, repay the indebtedness owing to Thomas Bell. In a letter dated July 17, 1889, he wrote: "I inclose your account up to the 30th of June, showing that you owe me $74,633.33. This is perfectly frightful; if you go on in this way the value of the land will be eaten up." In a letter dated September 7, 1889, he wrote: "The draft for $500 turned up to-day. I told you that you must not draw more than $300 for family allowance. This must suffice. Your account has run up pretty nearly to the value of the ranch. . . . I am determined to stop this expenditure, for you would soon run up your account to the full value of the land—so in future I will only advance $300 per month, and this must be paid to your wife—she must sign the draft, otherwise I will not pay it." On November 2, 1889, plaintiff wrote to Thomas Bell, asking for $200 in addition to the $300 for November for his wife. In a letter in answer to this, dated November 8, 1889, Thomas Bell wrote to plaintiff, and in the letter, after again admonishing plaintiff, said: "This must be stopped, and you had better tell your wife

how you stand. Tell her how much you owe me, and how near it is to the value of the land.'' In a letter dated June 9, 1890, Thomas Bell wrote: ''I opened the inclosed telegram, and found it to be from madame, on the question of family allowance. I wish you would tell her your position, that your debt to me has run up to $82,000 from $25,000, which it was on August 27, 1887. Explain to her that it is absolutely necessary to curtail expenses in accordance with your means. I do not really believe your land is worth more than ten dollars per acre, so that what you owe me is coming pretty close to that.'' There are many other letters of like character. In December, 1891, the indebtedness of plaintiff to Thomas Bell was over $100,000, and after writing and informing plaintiff, Thomas Bell borrowed $60,000 from the San Francisco Savings Union and caused Staacke to give the bank a deed of trust on both tracts of land to secure it. The money, less the expenses of the loan, was placed to the credit of plaintiff, and he was fully informed of the transaction. He made no objection, but continued to draw money from Thomas Bell up to the time of his death, in October, 1892. Plaintiff never, by word or act, denied the claims of Thomas Bell that the land was held in trust as security until long after the death of Bell. After the death of Thomas Bell the plaintiff presented a claim against the estate, claiming $360 per month, which he alleged was agreed to be paid him for the support of his family out of the rents, issues, and profits of the ranch. This claim was rejected by the executors, and this action was commenced in March, 1893.

In the original complaint, which was verified, plaintiff alleged the conveyance to Staacke; the fact that Thomas Bell was to have possession of the ranch, receive the rents, issues, and profits thereof, and pay to plaintiff three hundred and sixty dollars per month, independent of the rents or profits. In this original complaint, which was introduced in evidence, plaintiff alleged and swore, *"that it was understood and agreed between said Thomas Bell and plaintiff that the said monthly allowance should continue until the sale of said property as aforesaid, and should be, with the other amounts theretofore advanced and to be thereafter advanced by said Thomas*

*Bell to plaintiff, charged to plaintiff, to be reimbursed by him to said Thomas Bell out of the proceeds of sale.''* Thus, we have the acts and conduct of the parties up to the time of Bell's death, and the sworn statement of the plaintiff, at the time he commenced this action, all tending to show that the deed was in lieu of the notes and mortgage, and intended as security for the indebtedness due, and to become due, to Thomas Bell. The contemporaneous and practical construction of a contract by the parties is strong evidence as to its meaning if its terms are equivocal. "Tell me," said Lord Chancellor Sugden, "what you have done under a deed, and I will tell you what the deed means." (*Attorney-General* v. *Drummond,* 1 Dru. & Walsh, 353; 2 H. L. Cas. 837. See *Keith* v. *Electrical Engineering Co.,* 136 Cal. 181, and cases cited.) After the original complaint was filed and the case had been long pending, the plaintiff for some reason changed his attorney, and the theory of the case was changed by amending the complaint and claiming that the deed to Staacke was in trust for plaintiff, and not as security for any of the plaintiff's indebtedness to Thomas Bell. Plaintiff had the right, probably, to so amend his complaint and change his theory, but this did not change the effect to be given to a solemn statement of the fact when relying upon his previous theory. And where the court below seems to have based its finding entirely upon the evidence of plaintiff, the fact stated in the former verified complaint becomes very material in determining whether or not the abstract statement of plaintiff on this trial, under his latest theory, shall prevail as against the mass of facts and circumstances herein narrated. The whole record must be looked to in order to ascertain the truth. So viewing the record, we do not think there was any substantial conflict. This was the view expressed by the lower court upon the first trial, for, in the opinion, it is said: "The deed to Staacke of the ten-thousand-acre tract was in consideration of two hundred and sixteen thousand dollars in notes held and payable to Thomas Bell. *Prima facie,* he paid the whole consideration. But by the agreement of August 27, 1887, it clearly appears that John S. Bell has an interest in that consideration,—that Thomas Bell holds said notes, not simply as pledgee, but that he holds them in trust as well,

for the interest of both himself and John S. Bell. When he changes the security, John S. Bell's interest follows the property.'' It is equally true that Thomas Bell's interest followed the property. He changed the notes and mortgage which were pledged to him into land by consent of the owner of the notes and mortgages. He took the land in lieu of the notes and mortgage, and it became subject to the written agreement made as to the notes and mortgages. (*Price* v. *Reeves*, 38 Cal. 457; *Roach* v. *Caraffa*, 85 Cal. 437; *Barker* v. *Hurley*, 132 Cal. 28.) The rights of Thomas Bell in and to the trust property were declared under the written instrument of August 27, 1887. It was the duty of Thomas Bell, as holder or pledgee of the promissory notes and mortgages, to collect them when due. He did commence foreclosure proceedings for the purpose of collecting them. If he had obtained title to the land under the foreclosure, the title would have been held by him as security under the written agreement made August 27, 1887. The title was conveyed by consent of plaintiff to Staacke, and thus acquired without the machinery of foreclosure. Thomas Bell continued to hold the land in the name of his confidential clerk, in lieu of the notes and mortgages. He continued to hold possession of the land and collect the rents and profits. He was doing so for the benefit of plaintiff, and upon the faith of the title thus held he made advances for years and years for the support of plaintiff and his family. Plaintiff knew the condition of the title, the fact that Thomas Bell claimed it as security, and that upon the faith of such claim the advances were made to him. He was informed time and time again that Thomas Bell was making the advances on the property. He never by word or act repudiated such claim by Thomas Bell, but insisted upon the advances being made. He will now be held to the agreement as he understood it, as he acquiesced in it for years, as he believed it to exist at the time he presented his claim against the estate of Thomas Bell and at the time he commenced his action.

The alleged errors of law complained of consist of objections sustained to two questions propounded by the attorney for appellants to the defendant Staacke on his direct examination. One was an inquiry whether James Wheeler, attorney

for Thomas Bell, when he delivered the deed from Grover and Rosener to the witness, made any remark as to the purpose of its execution. The ruling sustaining the objection was correct. The conversation referred to occurred nearly three months after the deed had been executed, and there was no showing that James Wheeler was the attorney, or agent, or authorized to act or speak for plaintiff, or that plaintiff was present when the conversation referred to was had.

A question of the same tenor was asked the witness with reference to a conversation with Thomas Bell about the same time, and was properly sustained, as there was no showing that plaintiff was present.

The letter from Staacke to Louis James was not admissible on any principle, and the court properly excluded it. It was a private letter, written after the death of Thomas Bell, and plaintiff had never seen or known of its existence.

For the reasons given, the order denying the motion for a new trial is reversed, and the cause remanded.

McFarland, J., concurred.

SHAW, J., concurring.—I concur in the opinion of Justice Lorigan. I desire, in addition, to say, plainly and unequivocally, that it is entirely immaterial whether a specification of a particular wherein the evidence is claimed to be insufficient to justify a verdict or decision points to a probative fact or an ultimate fact. In either case the specification is sufficient as to the particular fact pointed out, and challenges the sufficiency of the evidence to sustain it.

Angellotti, J., and Henshaw, J., concurred with Shaw, J.

The following opinion was rendered by the court in Bank on rehearing, December 28, 1903.

. THE COURT.—The petition for rehearing is denied, but the judgment heretofore rendered herein in this court is hereby amended so as to read as follows: "The order denying the motion for a new trial is reversed except as to the issues covered by the 'twenty-third' paragraph of the findings, and the following portion of the 'twenty-second' paragraph of

the findings, to wit: 'That John S. Bell was indebted to Thomas Bell on the sixteenth day of October, 1892, the day· when Thomas Bell died, on account of advances of money· and interest thereon, in the sum of $52,120.15,' and paragraph '4' of the conclusions of law, and except as to the issues covered by the 'additional findings,' and cause remanded for new trial of all other issues."