[Civ. No. 946.    Third Appellate District.—September 6, 1912.]

PEOPLE'S WATER COMPANY, a Corporation, Respondent, v. JOHN DOE LEWIS (EDWARD WILLIAM LUES), Appellant.

EJECTMENT—TITLE UNDER UNITED STATES PATENT—DEFENSE OF ADVERSE POSSESSION—OBJECTION TO PATENT FOR FIRST TIME ON APPEAL — REVIEW.—Where the plaintiff in an action of ejectment claimed title under the grantee of a United States patent, and the only claim made by defendant in the trial court was title by adverse possession, the defendant cannot be heard to object for the first time upon appeal that it was not shown in the trial court that the railroad company, which was the original patentee, had complied with the terms prescribed by the act of Congress as the condition on which the lands should be granted by the government.

ID.—PATENT CONCLUSIVE EVIDENCE OF ASCERTAINED FACTS WITHIN JURISDICTION OF LAND DEPARTMENT.—When a law of Congress provides for the disposal and patenting of certain public lands upon the ascertainment of certain facts, which the proper officers of the land department have jurisdiction to ascertain and determine, the patent issued thereon is a conclusive declaration that such facts have been found in favor of the patentee.

ID.—INSUFFICIENT TITLE BY ADVERSE POSSESSION OF PART OF PATENTED TRACT—FAILURE TO PAY ALL TAXES ASSESSED.—A title claimed by adverse possession of part of the patented premises for five consecutive years is not supported, where it appears that all taxes assessed on the property claimed were not paid by the claimant for five consecutive years. The fact that the adverse claimant requested the assessor to assess his adverse claim, and that he refused to do so, does not excuse the payment of all taxes assessed on the property to perfect his adverse title, and if he fails by the payment of one tax thereon by the owner, before his title has accrued, he fails entirely.

APPEAL from a judgment of the Superior Court of Contra Costa County.    R. H. Latimer, Judge.

The facts are stated in the opinion of the court.

P. M. Bruner, for Appellant.

Tom M. Bradley, and Harry E. Leach, for Respondent.

BURNETT, J.—The facts of this case are few and simple and the law involved therein is plain and well settled.    The

complaint in ejectment was in the usual form.    The answer denied to plaintiff ownership of any part of the property or any interest therein, admitted possession by appellant, set up title by prescription, and pleaded the statute of limitations. The appeal is from the judgment in favor of plaintiff.

At the trial, without objection, contest or contradiction, the legal record title was shown to be in respondent.    By mesne conveyances it was connected directly with a United States patent, embracing the land in controversy, issued December 21, 1901, to the Central Pacific Railroad Company.    The only claim made by appellant in the court below was that he had acquired title by adverse possession.    In this court there is an additional contention that there was an infirmity in the proof of the legal record title, inasmuch as it was not shown that the said railroad company had complied with the terms prescribed by the act of Congress as the condition upon which the land should be granted by the government.    It would be singular, indeed, if a litigant were permitted to keep his lips closed in the trial court, and to speak loud enough to be heard in the appellate tribunal and to maintain such an attack upon a patent issued with all the formalities of law.    These solemn instruments of conveyance are surely entitled to greater consideration than is implied by appellant's argument.    Even if the objection had been made at the trial, manifestly the patent would be at least *prima facie* evidence of the facts therein recited, and if said recitals could be controverted at all in such proceeding as this, the law would impose the burden of proof upon the one assailing the integrity of the instrument.    The effect of a patent to land issued by the government is fully discussed in *Standard Quicksilver Co.* v. *Habishaw,* 132 Cal. 115, [64 Pac. 113], and it is probably sufficient to refer to that case with the authorities therein cited.    The aptness of the following quotation, therein made from *Gale* v. *Best,* 78 Cal. 235, [112 Am. St. Rep. 44, 20 Pac. 550], can hardly be disputed: "The rule is well settled by numerous decisions of the supreme court of the United States, that when a law of Congress provides for the disposal and patenting of certain public lands upon the ascertainment of certain facts, the proper officers of the land department of the general government have jurisdiction to inquire into and determine those facts; that the issuance of a patent is an

official declaration that such facts have been found in favor of the patentee, and that in such a case the patent is conclusive in a court of law and cannot be attacked collaterally. . . . Our opinion is, that where a patent issues for public land, under a law which provides for its disposal as agricultural land—either to a railroad company or to pre-emption or homestead claimants—and there is no reservation in the law except a general one of mineral lands, and no reservation at all in the patent, then the patent must be considered as a conclusive determination by the government that the land is agricultural; and afterward, in an action in a court of law, it is not competent to reopen the question of the character of the land.'' Of course, as pointed out in the Habishaw case, there is a well-known exception to the foregoing doctrine recognized by the decisions where the department has no jurisdiction to dispose of the lands—''that is, if a patent be absolutely void upon its face, or were issued without authority or were prohibited by statute, or if the lands had been reserved from sale, or dedicated to special purposes, the patent may be collaterally impeached—that is, it may be shown by anyone to be void.'' It is clear that there is nothing disclosed here to bring the case within the exception, even if the point had been made in the court below. The fact is that it is made manifest by the recitals of the patent that the title to the property vested in the railroad company in 1870, as in that year the demands of the grant by the act of Congress had been fully met. It is said, in *Southern Pac. R. R. Co.* v. *Whitaker,* 109 Cal. 272, [41 Pac. 1084], ''that the grant to the railroad company was a grant *in presenti,* and operated to vest in the grantee a perfect title to the granted lands, when the map of the definite location of the road was filed in the office of the commissioner of the general land office, is no longer an open question. It has been so held by numerous decisions rendered in similar cases by the supreme court of the United States and by this court. And thereafter the grantee could have maintained an action for the possession of any such lands, without waiting for the issuance of a patent therefor. (*Curtner* v. *United States,* 149 U. S. 675, [37 L. Ed. 890, 12 Sup. Ct. Rep. 985], and cases cited; *Forrester* v. *Scott,* 92 Cal. 402, [28 Pac. 575]; *Jatunn* v. *Smith,* 95 Cal. 154, [30 Pac. 200].)''

After proving as aforesaid the record legal title, plaintiff introduced evidence showing that the property was assessed from the year 1898 to 1910, inclusive, and then rested.   From a juridical standpoint, then, this situation was presented: Plaintiff, having established a legal title to the property, is presumed to have been possessed thereof within the time required by law, and the occupation of the property by defendant to have been under and in subordination to the legal title, and this presumption can only be overcome by sufficient evidence on the part of appellant that he had held and possessed the property adversely to such legal title for five years before the commencement of the action.   (Code Civ. Proc., sec. 321; *Ross* v. *Evans,* 65 Cal. 440, [4 Pac. 443]; *McNoble* v. *Justiniano,* 70 Cal. 395, [11 Pac. 742]; *Southern Pacific Railroad Co.* v. *Whitaker,* 109 Cal. 272, [41 Pac. 1084]; *Standard Quicksilver Co.* v. *Habishaw,* 132 Cal. 115, [64 Pac. 113].)   The elements that constitute this "adverse" holding are quite familiar and need not be restated.   (Code Civ. Proc., sec. 325; *Unger* v. *Mooney,* 63 Cal. 586, [49 Am. Rep. 100].)

As to these it may be said that it would at least be a fair inference that appellant's occupancy was not under a claim of right in view of his testimony that "I went to the assessor's office, Henry Jones, and told him I was living on the land and I would like to have the land assessed to me, and he asked me if I had title to the land and I told him no, and he said he could not assess it to me then."   It is no doubt true that the "acts and declarations of the party respecting his claim at any time while in possession before commencement of the action, whether within or after five years after the commencement of his possession, would be admissible as tending to show the character in which he claimed during the whole time," and whether the possession is adverse must be determined from all the evidence in the case.   (*Cannon* v. *Stockmon,* 36 Cal. 535, [95 Am. Dec. 205].)

This feature of the case, however, may be passed without further comment, as it is plain that the lower court was entirely justified in concluding that appellant had utterly failed to satisfy the requirement of the code "that in no case shall adverse possession be considered established under the provisions of any section or sections of this code unless it shall be shown . . . and the party or persons, their predecessors and

grantors, have paid all the taxes, state, county or municipal, which have been levied and assessed upon the land." Appellant testified: "I have known the lands for about twelve years. They were not occupied by any person when I first became acquainted with them, and I then settled upon them. I went to the land office and tried to file on it and they would not let me file on it. I went twice to file on it and they would not let me file on them." He detailed also the improvements that he made on the land, and in the cross-examination the following questions and answers appear: "Did you ever pay any taxes on it? A. There was none assessed against me to pay on it. Q. Did you ever pay any taxes on it? A. There was none assessed on it to me, I couldn't pay it. Q. Did you ever pay any taxes? A. Not on the land I didn't." It is thus to be seen that appellant, in one vital respect, has fallen short of establishing his title by prescription. He attempts to excuse his failure on the ground that he was prevented from making the required payment. This explanation is sought to be shown by an affirmative answer to the leading question of his counsel: "I understood you to say that you had offered to pay all taxes that were assessed?" But it does not appear in any manner when or to whom this offer was made or whether it was ever repeated. The witness probably referred to the occasion aforesaid when he requested that the property be assessed to him. No case has been cited and it is believed none could be found in which it has been held that, under similar circumstances, there has been a compliance with the plain provision of the statute.

The decisions upon which appellant relies can afford him no comfort and in their facts are so unlike this as to be hardly instructive. As pointed out by respondent, the sentence quoted by appellant from *McNoble* v. *Justiniano,* 70 Cal. 395, [11 Pac. 742], relates to a supposititious case different from the one before us. As to that, even, the supreme court ventured only the tentative suggestion that a different question "might" have been presented. It is hardly necessary to add that a legal doctrine cannot be safely anchored to a "perhaps" or "might have been." But the statement which seems to afford to appellant some satisfaction is preceded by the declaration of the necessity for the payment of the taxes by the defendant, and it was held that he was not relieved of the

duty by reason of the fact that the property was assessed to others in with a larger tract, it being said that: "Under the circumstances the defendant was not relieved of the consequence of a failure to pay the taxes by the fact (if such be the fact) that after the assessment was made he could not pay the taxes on the land of which he claimed the possession without paying those assessed on the larger tract including such land."

In *Cavanaugh* v. *Jackson,* 99 Cal. 672, [34 Pac. 509], the claimant had paid the taxes as required by the statute, and the vital question was as to whether the payment by the owner of the record title rendered ineffective the payment by the defendant who claimed title by prescription, and the court held that: "The fact that the owner of the land has also had the land assessed to him during the five years' period, and has paid the taxes levied thereon, does not affect the rights of the adverse possessor, who has continuously paid or tendered the taxes assessed to himself, regardless of the time or priority of payment of taxes by them respectively."

In *Owsley* v. *Matson,* 136 Cal. 401, [104 Pac. 983], the taxes were also paid by the claimant for the term prescribed by the statute. The principal question involved grew out of the circumstance that there was a redemption of the property by the adverse possessor and also a double assessment of the property. It was rightly held by the supreme court that: "Where a tax on the land adversely possessed is allowed to become delinquent and a sale has taken place, and so far as appears, a redemption has been made thereof in good faith by the adverse possessor or his successor in interest while in undisturbed possession, such redemption operates as a payment of the tax, within the terms of the statute requiring the adverse possessor to pay the taxes upon the property claimed." As to the other question, the McNoble case was followed in holding that it was immaterial that the land was also assessed to the owner of the record title and the taxes paid by him.

In *Glowner* v. *De Alverez,* 10 Cal. App. 194, [191 Pac. 432], the decision was against the adverse claimant for the reason that he had paid the taxes for only four years, and the levy for the fifth year was paid by the owner of the record title. Therein it was said that "title by adverse possession cannot be established by merely showing that the land has

been occupied and claimed for five years continuously, when all taxes assessed against the property are paid by the possessor for four years only, and the taxes for the fifth year have been paid by the owner, though assessed against the possessor." It was properly held that the assessment for taxation is of the property, and not against the owner or possessor, and that "the adverse possessor must be as vigilant to pay all taxes assessed against the property as in holding the possession of the land, and if he fails by reason of the payment of one tax by the owner before his title has accrued, he fails entirely."

In consonance with the plain terms of the law, there is no doubt that for five consecutive years the claimant must pay all the taxes assessed against the property, or at least tender such payment during the same period. To so hold is to affirm the judgment of the lower court, and it is so ordered.

Chipman, P. J., and Hart, J., concurred.