[L. A. Nos. 1913, 1927. Department One.—February 14, 1908.]

KATE M. BELL and JAMES L. CRITTENDEN, Appellants, v. SAN FRANCISCO SAVINGS UNION et al., Respondents, and TERESA M. BELL, Administratrix of the Estate of Thomas Bell, Deceased, and U. S. OIL AND LAND COMPANY, Appellants.

NEW TRIAL—ADVERSE PARTY SERVED WITH NOTICES OF INTENTION—DEATH PENDING MOTIONS — APPEALS FROM ORDERS — SERVICE OF NOTICE.—An adverse party, to whom the notices of intention of various parties separately moving for a new trial were addressed, and who was served therewith, became a party to each proceeding on motion for a new trial, and did not cease to be a party thereto by reason of his death after such service, before the motions were heard; and upon appeal from each of the orders denying such motions his representative must be served with the notice of appeal.

ID.—REPRESENTATIVE NOT APPOINTED—LOSS OF APPEALS—ORDERS NOT REVERSIBLE.—If a representative of the estate of such adverse party has not been appointed, and cannot be appointed in time for appeal, the appeals are lost, and the orders cannot be reversed, and if not dismissed must be affirmed.

ID.—SERVICE UPON ATTORNEY OF ADVERSE PARTY—TERMINATION OF AUTHORITY.—The death of the adverse party operated as a termination of the authority of his attorney, and the service of notices of appeal upon him was ineffective.

ID.—NOTE SIGNED BY ADVERSE PARTY—MOTION BY SECURED CREDITOR TO DISMISS APPEALS BASED ON RECORD — FAILURE TO PRESENT CLAIM NOT CONSIDERED.—Where the adverse party was the maker of a note to a secured corporation which moved to dismiss appeals for failure to serve the adverse party with notice thereof, the motion must be determined only by what appears in the record upon appeal; and a showing that the creditor secured had not presented a claim against the estate of the adverse party cannot be considered.

ID.—VOLUNTARY APPEARANCE OF EXECUTOR OF ADVERSE PARTY—LAPSE OF TIME FOR APPEAL—JURISDICTION NOT CONFERRED.—The voluntary appearance of the executor of the adverse party, after the lapse of the time for appeal from the orders denying a new trial, cannot confer jurisdiction to determine such appeals upon the merits.

ID.—APPEALS RETAINED FOR MODIFICATION OF JUDGMENT BENEFITING APPELLANTS AND ADVERSE PARTY.—Though no modification of the judgment can be allowed to the detriment of the estate of the adverse party, the appeals will be retained for modification of the judgment in favor of the creditor secured in respect of excessive interest allowed, which will benefit and not injure the estate of the

adverse party, and will also benefit the appellants in the matter of an accounting between estates represented by them, which are included in the security held by such creditor.

ID.—EXCESSIVE INTEREST UPON INTEREST—WHOLE INTEREST AVOIDED—CONSTRUCTION OF CODE.—Under section 1919 of the Civil Code, providing that "the parties may, in any contract in writing whereby any debt is secured to be paid, agree that if the interest . . . is not punctually paid, it shall become a part of the principal, and thereafter bear the same rate of interest as the principal debt," a provision in the note secured, signed by the adverse party, making the unpaid interest on interest bear a greater rate than that of the principal sum secured, renders the whole interest void in its entirety, and not merely as to the excess of the rate agreed upon, and the judgment must be modified in so far as it allows such illegal interest.

ID.—SEVERANCE OF ILLEGAL FROM LEGAL INTEREST.—Where the allowance of illegal interest continued during the maturity of the note and an agreed extension thereof, but the note provided that after maturity of the principal any unpaid principal and interest shall bear the same increased rate, such provision is legal; and in modifying the judgment there must be a severance of the illegal from the legal interest, and only the former can be deducted from the judgment.

APPEALS from a judgment of the Superior Court of Santa Barbara County, and from orders denying motions for a new trial. J. W. Taggart, Judge.

The facts are stated in the opinion of the court, and in the decisions therein referred to.

James L. Crittenden, *in pro. per.*, and for U. S. Oil and Land Company, defendant, Appellants.

T. Z. Blakeman, for Teresa Bell, Administratrix, Appellant.

Canfield & Starbuck, for San Francisco Savings Union et al., Respondents.

SLOSS, J.—This action involves the rights of the parties in two tracts of land in Santa Barbara County containing, respectively, ten thousand and four thousand acres. Many of the facts here presented have been before this court in *Bell* v. *Staacke,* 141 Cal. 186, [74 Pac. 774], and 151 Cal. 544, [91 Pac. 322], and we refer to the opinions on those appeals for a general history of the transactions leading up to this litigation.

CLIII Cal.—5

The present action was brought by Kate M. Bell, James L. Crittenden, and Sidney M. Van Wyck, Jr., claiming as successors in interest of John S. Bell, against the San Francisco Savings Union, its trustees, and the successors in interest of Thomas Bell, deceased, to obtain a decree quieting the title of the plaintiff in and to the ten-thousand-acre tract referred to in the above-mentioned opinions. The San Francisco Savings Union, which was not a party to the action of Bell v. Staacke, was brought into this case by reason of the fact that it had advanced upon the promissory note of George Staacke, guaranteed by Thomas Bell, the sum of sixty thousand dollars, and had taken as security for the payment of said note a deed of trust of the ten-thousand-acre and the four-thousand-acre tracts, executed by Staacke to Henry C. Campbell and Thaddeus D. Kent, as trustees.

Prior to the conveyance to Campbell and Kent, the legal title to this property was vested in George Staacke. Staacke claimed no beneficial interest whatever, but was holding purely as trustee. The controversy in Bell v. Staacke was as to the nature of the trust upon which he held, the claim of the plaintiff in that action (John S. Bell) being that Staacke held solely as trustee for him as to the ten-thousand-acre tract, it being conceded that he held the four-thousand-acre tract as trustee for Thomas Bell. The estate of Thomas Bell contended, in the case of Bell v. Staacke, that the ten-thousand-acre tract was held by Staacke in trust, first, for the repayment to Thomas Bell of certain advances made by him to John S. Bell, the surplus only after such payment to go to John S. Bell. This controversy was, as the result of the two trials in Bell v. Staacke, finally determined in favor of the Thomas Bell estate. The plaintiffs, claiming as successors in interest of John S. Bell, renew in this case his former contention, and, in addition, claim that the deed of trust executed by George Staacke to Campbell and Kent, as trustees for the San Francisco Savings Union, was made by Staacke without the consent of John S. Bell, the beneficiary of the trust, and that the Savings Union and its trustees had notice, before the payment of any part of the loan of sixty thousand dollars and before the execution of the deed of trust, that John S. Bell was the owner of the ten-thousand-acre tract.

Campbell and Kent, as trustees for the San Francisco Savings Union, have been succeeded by the Mercantile Trust Company of San Francisco, a corporation. The Savings Union and its trustees answered, denying that at the time of the advance of the sixty thousand dollars and of the acceptance of the trust-deed they had any notice of the alleged rights or claims of John S. Bell, and alleging that John S. Bell knew of the transaction at the time and received the benefit of the loan, the amount of which had been, with his consent, credited upon his indebtedness to Thomas Bell by the latter. Staacke, who was named as one of the parties defendant in the complaint, answered individually and as executor of the will of Thomas Bell, deceased, denying the material allegations of the complaint. After filing this answer Staacke was removed as executor of the last will of Thomas Bell, and was succeeded by Teresa Bell as administratrix of the estate of Thomas Bell, deceased, with the will annexed. As such administratrix, Mrs. Bell filed an amendment to the answer filed by Staacke, as executor, by which she claimed that the lien of the Thomas Bell estate upon the ten-thousand-acre tract was prior to the claim of the San Francisco Savings Union and that the proceeds of any sale should be applied first to the payment of the indebtedness of John S. Bell to Thomas Bell. Thereafter a cross-complaint was filed by the Savings Union and those who had acted and were acting as trustees under the deed of trust to secure its note, together with Staacke, asking that the court "take under its direction and control the execution by said defendant Mercantile Trust Company of the trust created by said grant (the deed of trust to Campbell and Kent) . . . and direct, instruct and supervise said defendant in executing said trust." The U. S. Oil and Land Company, claiming as a successor in interest to the plaintiff, James L. Crittenden, was brought in by amendment as an additional defendant to the cross-complaint. By the various answers to the cross-complaint, the parties representing the John S. Bell interest and the Thomas Bell interest raised substantially the same issues as those which had been raised by the pleadings heretofore discussed, and in addition, it was pleaded that the note held by the Savings Union was barred by the statute of limitations and that the right of the cross-complainants to any affirmative relief was barred by limitation.

The cause was tried upon these issues, and findings were made in accord with the contention of the San Francisco Savings Union. The court did not make any finding as to the statute of limitations, but the judgment contained an adjudication that the enforcement of the trusts declared in the deed from Staacke to Campbell and Kent "is not barred by any statute of limitations of this state." The decree directed the Mercantile Trust Company to sell both tracts of land, selling the ten-thousand-acre tract first, and to pay out of the proceeds of sale to the San Francisco Savings Union the amount found to be due to it on its note, and the balance of the proceeds, if any, to the defendant Staacke, his heirs and assigns. It is also adjudged that the plaintiffs take nothing by the action.

The plaintiff Crittenden, who had acquired Van Wyck's interest, and the defendant U. S. Oil and Land Company, moved for a new trial, which was denied, and they now appeal from the judgment and from the order denying their motion for a new trial. The defendant Teresa Bell, as administratrix, moved for a new trial as to the issues arising upon the pleadings between said Teresa Bell, as administratrix, and the defendant San Francisco Savings Union, its trustees, and George Staacke. This motion being denied, said administratrix appealed from the order denying her motion and from the judgment, except that portion of it adjudicating that the plaintiffs and the defendant U. S. Oil and Land Company take nothing by the action.

The respondents San Francisco Savings Union and its trustees move to dismiss all four of these appeals upon the ground that the defendant George Staacke was an adverse party to all of the appellants and that no notice of appeal was ever served upon him, or upon any one representing him.

Staacke died on the twelfth day of April, 1905. Both appeals from the judgment and both appeals from the orders denying the motions for new trial were taken after his death. No service of any of the notices of appeal upon any representative of Staacke was shown. Each of the notices of intention to move for a new trial was addressed to Staacke, among other parties, and each was served on his attorneys and filed before his death. If this made Staacke a party to

the proceedings for new trial, he was, if an adverse party, entitled to service of notice of appeal from the order denying a new trial. If he was not a party to such proceedings, failure to serve him with notice of appeal would not justify a dismissal of that appeal, but the order denying the motion would have to be affirmed because he had not been a party to the proceedings for new trial in the court below. (*Estate of Ryer*, 110 Cal. 556, [42 Pac. 1082]; *Herriman* v. *Menzies*, 115 Cal. 15, 26, [56 Am. St. Rep. 81, 44 Pac. 660, 46 Pac. 730]; *Johnson* v. *Phenix Ins. Co.*, 146 Cal. 571, [80 Pac. 719]; *Johnson* v. *Phenix Ins. Co.*, 152 Cal. 196, [92 Pac. 182].) We have no doubt that Staacke did become a party to both proceedings for a new trial by reason of the fact that the notice of intention to move for a new trial was in each instance addressed to and served upon him. The filing and service of such notice of intention is the initiation of a proceeding for a new trial. (Code Civ. Proc., sec. 659.) In so far as the proceeding for a new trial is a "new statutory proceeding, collateral" to the main action, (*Fowden* v. *Pacific Coast S. S. Co.*, 149 Cal. 151, [86 Pac. 178]), the parties to such collateral proceeding are determined by the notice, and jurisdiction of the parties, other than the moving party, is obtained by the service upon them of such notice. Staacke was so served by each of the parties moving for a new trial, and he did not cease to be a party to the proceeding by reason of his death after the service and filing of the notice, and before the hearing of the motion. If he was an *adverse* party, it was as necessary to serve him with notices of appeal from the orders denying the motions for new trial, as it was to serve him with notices of appeals from the judgments.

If Staacke was an adverse party, upon whom the service of notice of appeal was requisite in order to vest this court with jurisdiction, such service could not, after his death, be made upon the attorneys who had represented him in the action during his life. His death terminated the authority of the attorneys to represent him, and service of the notices of appeal upon them was not effectual so far as his interest was concerned. (*Judson* v. *Love*, 35 Cal. 463; *Moyle* v. *Landers*, 78 Cal. 99, [12 Am. St. Rep. 22, 20 Pac. 241]; *Pedlar* v. *Stroud*, 116 Cal. 461, [48 Pac. 371]; *Churchill* v. *Flournoy*, 127 Cal. 355, [59 Pac. 791]; *Estate of Turner*, 139 Cal. 85,

[72 Pac. 718].) The necessity of serving a notice of appeal upon a respondent who is an adverse party is not obviated by the death of such party. (*Judson* v. *Love,* 35 Cal. 463; *Moyle* v. *Landers,* 78 Cal. 99, [12 Am. St. Rep. 22, 20 Pac. 241]; *Pedlar* v. *Stroud,* 116 Cal. 451, [48 Pac. 371].) The appellant must, within the time allowed for taking an appeal, serve his notice of appeal upon all adverse parties. If any of said parties have died, service must be made upon the personal representatives of the decedent, and if the appellant is unable to procure the appointment of a personal representative, and to serve such representative within the required time, his appeal is lost. (*Williams* v. *Long,* 130 Cal. 58, [80 Am. St. Rep. 68, 62 Pac. 264]; *Estate of Turner,* 139 Cal. 85, [72 Pac. 718].)

The appellant Teresa Bell, as administratrix, has sought to overcome the effect of a failure to serve her notices of appeal upon Staacke or his representative by filing in this court a notice of appearance on behalf of George Henry Howard, as executor of the last will of George Staacke, deceased. This notice of appearance was filed on April 23, 1907, after the service upon the appellant of the respondent's motion to dismiss her appeals, and after the expiration of the time within which appeals could have been taken. Such voluntary appearance was not effectual to confer jurisdiction of the appeals upon this court. (*Niles* v. *Gonzales,* 152 Cal. 90, [92 Pac. 74].) It is no doubt true, as contended by the appellant Teresa Bell, that the appellate court may obtain jurisdiction of an appeal as well by voluntary entrance of appearance by an adverse party, as by the service of a notice of appeal upon him. (*Hibernia S. & L. Soc.* v. *Lewis,* 111 Cal. 519, [44 Pac. 175]; *Valley Lumber Co.* v. *Struck,* 146 Cal. 268, [80 Pac. 405]; *Burnett* v. *Piercy,* 149 Cal. 183, [86 Pac. 603].) In none of these cases, however, was the court dealing with the question of an appearance made after the time for taking an appeal had passed. The service of notice of appeal has a twofold purpose,—first, to give the appellate court jurisdiction of the person of the respondent, and, second, to give the appellate court jurisdiction of the subject-matter of the appeal. Jurisdiction of the person may be conferred by a voluntary appearance at any time, but inasmuch as jurisdiction of the subject-matter can never be conferred by

consent, the voluntary appearance by the respondent must be made within the time in which a service of notice upon such respondent would be effectual to vest jurisdiction of the appeal in the appellate court.

An "adverse party," within the meaning of section 940 of the Code of Civil Procedure, is one "whose interest in the subject-matter of the appeal is adverse to or will be affected by the reversal or modification of the judgment or order from which the appeal has been taken." (*Senter* v. *Bernal,* 38 Cal. 637.) If a judgment may be modified in any manner favorable to the appellant without injuriously affecting the interest of the party not served, the appeal will not be dismissed. In such case the court will, notwithstanding the failure to serve a party, "decide the case with respect to the interests of the other parties, so far as it may be done without injuriously affecting" the interests of the party not served. (*Burnett* v. *Piercy,* 149 Cal. 178, [86 Pac. 603]; *Williams* v. *Santa Clara Min. Assoc.,* 66 Cal. 195, [5 Pac. 85].) If any of the contentions of the appellants here can be sustained without detriment to the rights of Staacke, the appeals must be retained. But such points as cannot be determined in favor of an appellant without injury to the interests of Staacke's estate must be disregarded without consideration of their merits.

One of the points urged by the appellant Teresa Bell, as administratrix, and available also, we think, to the other appellants, is that the court, in fixing the amount due to the San Francisco Savings Union on its note, erred in allowing an excessive amount of interest. A modification of the judgment, by reducing the amount to be paid to the Savings Union out of the sale of the land, could in no way injuriously affect the interests of the Staacke estate. Indeed, a reduction of the amount of the claims of the Savings Union could only be a benefit to the Staacke interest, since it would tend to lessen the possible ultimate liability of that interest on the sixty-thousand-dollar note. It may be questionable whether the point as to excessive allowance of interest arises properly on the appeals from the judgment or from the order denying a new trial. For reasons to be stated, we think that it certainly can be raised on the appeals from the judgment, and that the right of the appellants to raise it on the other appeals

also is sufficiently clear to justify the retention of those appeals as well as the appeals from the judgment.

But, while the court may review the action of the lower court in figuring interest on the sixty-thousand-dollar note, we think the judgment and order appealed from cannot be reversed, nor can it be modified in any other particular without detriment to the interests of Staacke or his estate.

The contention of the appellants Crittenden and U. S. Oil and Land Company is that Staacke held the ten-thousand-acre tract in trust solely for their predecessor, John S. Bell, and that, as such trustee, he had no power to make the deed of trust of that tract to the trustees for the San Francisco Savings Union. The effect of a reversal may be to vest the ten-thousand-acre tract in John S. Bell, free of any claim of the Savings Union. Staacke, however, as a maker of the note which is secured by the deed of trust to the trustees of the Savings Union, is directly interested in having the property applied to the payment of this note. If it should eventually be held that, as these appellants contend, the San Francisco Savings Union has no interest in the land, or that the right of its trustees to sell is barred by limitation, Staacke, or his estate, may be compelled to pay the sixty-thousand-dollar note. The estate is directly interested in avoiding this liability by maintaining the present judgment which directs the sale of the property for the purpose of satisfying this note.

Nor do the appeals of Teresa Bell, as administratrix, occupy any different position. Her contentions are, in substance, that the claim of the Savings Union, if it had any, is subordinate to the claim of the estate of Thomas Bell, and that the proceeds of any sale of the property must be applied first to the satisfaction of the claim of the Thomas Bell estate. She also contends that the right of the Savings Union and its trustees to have any affirmative relief is barred by the statute of limitations. Her success on either of these propositions would manifestly be a detriment to Staacke in his capacity as maker of the note to the Savings Union. If the Savings Union be prevented from having a sale of the property for the purpose of satisfying its note, it may be, as above stated, that Staacke's estate would become liable for such note. Or, if the proceeds of such sale be applied first to the

payment of John S. Bell's indebtedness to Thomas Bell, it may be that there will not be sufficient surplus to satisfy the claim of the Savings Union, and in this way Staacke's estate may become liable for a portion or the whole of that indebtedness. It is clear, therefore, that this judgment, in directing the sale of the property for the purpose of satisfying a claim upon which Staacke is personally liable, confers upon him a legal advantage which would be destroyed or impaired by a reversal of the judgment or the order denying a motion for a new trial. These conclusions are in no way affected by the fact, conceded by all the parties, that Staacke in borrowing the money from the San Francisco Savings Union and making a deed of trust acted, not in his own interest, but as agent for Thomas Bell, who guaranteed the note. As between him and Thomas Bell, Bell was primarily, and Staacke merely secondarily, liable. But he did by executing the note make himself personally liable to the Savings Union, which, in the event of its inability to collect the amount of its note from the land or the estate of Thomas Bell, would unquestionably be entitled to hold Staacke's estate for any deficiency. That it did not ask for any such deficiency in this action is of no consequence. It has, on the record as it here appears, the right to pursue Staacke's estate for the amount of the note, and the latter is entitled to insist that a judgment which confers upon it the advantage of having the property in question applied to the payment of any such liability shall not be set aside without its being before the court and being heard. If the necessary effect of a reversal or modification as to any party is to take away this right, the judgment and order assailed must stand as to all parties.

The affidavit offered by the appellant Teresa Bell to show that the Savings Union has not, within the time allowed for the presentation of claims, presented any claim upon this note to the executor of the will of George Staacke, cannot be considered here. The motion to dismiss for want of service on an adverse party must be disposed of on the record. (*Harper v. Hildreth,* 99 Cal. 265, [33 Pac. 1103]; *Estate of Ryer,* 100 Cal. 556, [42 Pac. 1082]; *Kennedy* v. *Parks,* 120 Cal. 22, [52 Pac. 40].) On that record Staacke appeared to be an adverse party, and the necessity for serving him could not be obviated by acts or omissions of other parties not appearing

in the record and occurring after the time for appeal had expired.

In the foregoing discussion we have said nothing as to the contention of the appellants Crittenden and U. S. Oil and Land Company that the court erred in denying them any priority as against the estate of Thomas Bell. It is found, however, that the action of *Bell* v. *Staacke,* the pendency of which was set up in the pleadings, was still pending at the time of the decision, and that the question of the relations between John S. Bell and his grantees on the one hand, with Staacke and the estate of Thomas Bell on the other, in respect of the indebtedness of John S. to Thomas Bell and of the ten-thousand-acre tract are involved in said action and "are in course of judicial determination and settlement therein." The judgment, accordingly, made no adjudication of the rights of John S. Bell and Thomas Bell (or their successors) as between each other, leaving the question of those rights to be determined in *Bell* v. *Staacke.* If it could be said that Staacke had no interest in this controversy as to priorities between John S. Bell and Thomas Bell, the finding as to the pending action (which is not attacked) clearly made it the duty of the court to reserve for adjudication in that action the matters therein involved. (*Casey* v. *Jordan,* 68 Cal. 246, [9 Pac. 92, 305].)

There remains the question whether the amount allowed as interest on the note of the San Francisco Savings Union was excessive.

The court found that the principal of the promissory note of Staacke has not been paid, and that no interest thereon has been paid except the interest to the first day of November, 1896, and that the amount due on said note for principal and interest, to the date of the decision (March 1, 1905), is $148,-052.52. The note, so far as is material to the present inquiry, reads as follows:—

"SAN FRANCISCO, February 1st, 1892.

"On the first day of February, 1893,—I promise to pay to the San Francisco Savings Union,—the principal sum of sixty thousand dollars. And I further promise to pay interest on said amount, at the monthly rate of two thirds of one per cent—on the first day of each and every month till

payment of the principal, the first payment to be made this day.—

"And further, I agree that in case of default in the payment of any of the amounts of principal or interest above stipulated then such amounts shall bear interest from the date of their maturity until the day of payment, at the rate of one per cent per month.—              George Staacke."

Section 1919 of the Civil Code provides that "The parties may, in any contract in writing whereby any debt is secured to be paid, agree that if the interest on such debt is not punctually paid, it shall become a part of the principal, and thereafter bear the same rate of interest as the principal debt." Under this section unpaid interest cannot be made to bear interest at a rate greater than that borne by the principal debt (*Savings & Loan Soc.* v. *Horton,* 63 Cal. 105; *Dean* v. *Applegarth,* 65 Cal. 391, [4 Pac. 375]); and an agreement for interest on interest at a greater rate than that so allowed by the statute is illegal and void in its entirety, and not merely as to the excess over the rate that might have been agreed upon. (*Yndart* v. *Den,* 116 Cal. 533, [58 Am. St. Rep. 200, 48 Pac. 618].) By the note in question the maker agrees to pay interest on the principal at the rate of two thirds of one per cent per month (eight per cent per annum) until maturity, and thereafter at the rate of one per cent per month. Overdue installments of interest are to bear interest at the rate of one per cent per month. As to installments of interest falling due before the maturity of the principal, interest on interest is fixed at a rate greater than that borne by the principal. After the maturity of the note, the rate of interest is the same for principal and unpaid interest. The provision for interest on installments falling due before maturity is therefore in conflict with the statute. This should not, however, be held to affect the validity of the agreement in so far as it provides for interest on interest falling due after maturity. Any such installments bear the same rate as the principal, and as to them there is no violation of section 1919. The provision of the note for payment of interest on unpaid installments of interest is, in its relation to section 1919, severable. In so far as it allows interest on interest at a rate greater than is borne by the principal, it is void. For the period during

which it allows interest at the same rate as the principal it is good.

In computing interest in this case, the court allowed interest on the principal from November 1, 1896 (to which date interest had been paid), to the date of the decision, at the rate of one per cent per month, and on each year's interest, so figured, at the same rate. Under the views above expressed this would, on the face of the note, have been proper, since all such interest, both on principal and interest, accrued after maturity, at a time when the note fixed interest on principal and on unpaid interest at the same rate. All interest accruing prior to the maturity of the note had been paid. As to this, the agreement was executed, and no question of the validity of such executed agreement was before the court. But it was found that on December 22, 1896, John S. Bell and George Staacke agreed with the San Francisco Savings Union that the time for the payment of the principal of said promissory note should be extended until the twenty-second day of December, 1898. This finding follows an allegation of respondents in their cross-complaint and is binding upon them. The effect of such agreement was to waive any past default in the payment of principal and to postpone the maturity of the note until December 22, 1898. Until that date there was no default in the payment of the principal, and the condition on which the rate of interest was to be increased from eight to twelve per cent per annum had not arisen. It follows that interest on interest during this period could not exceed eight per cent per annum, and as the only contract for interest on interest was for twelve per cent per annum, interest on unpaid installments prior to December 22, 1898, could not be allowed at all. The judgment was therefore excessive in allowing interest on principal at the rate of twelve instead of eight per cent per annum from November 1, 1896, to December 22, 1898, and in allowing any interest on the installments of interest that fell due during this period. The overcharge on the first of these items amounts to $5,139.86; on the second to $11,539.99. Inasmuch as the findings set out the terms of the note, the payments of interest, and the extension agreement, this error is apparent on the face of the judgment-roll, and can be corrected by a modification of the judgment.

For the reasons above stated, the motion to dismiss the appeals is denied. The order denying both motions for a new trial is affirmed. The cause is remanded to the lower court, with directions to modify the judgment by deducting from the amount directed to be paid to the San Francisco Savings Union the sum of $16,679.85, and as so modified, the judgment will stand affirmed.

Angellotti, J., and Shaw, J., concurred.

Hearing in Bank denied.