UNITED STATES OIL & LAND CO. v. BELL et al.

(Circuit Court of Appeals, Ninth Circuit. January 11, 1915. Rehearing Denied March 9, 1915.)

No. 2415.

1. JUDGMENT ☞828—CONCLUSIVENESS—RES JUDICATA.

Judgment of the state Supreme Court that premature service in a notice of an intention to move for a new trial did not deprive the court of jurisdiction to hear an appeal nor constitute a reason for its dismissal on the ground that the court was without jurisdiction to hear it, etc., was res judicata and conclusively binding on a subsequent grantee of land sold under the judgment appealed from on a collateral attack on such judgment in a federal court.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1504–1509; Dec. Dig. ☞828.

Conclusiveness of judgments as between federal and state courts, see notes to Kansas City, Ft. S. & M. R. Co. v. Morgan, 21 C. C. A. 478; Union & Planters' Bank v. City of Memphis, 49 C. C. A. 468; Converse v. Stewart, 118 C. C. A. 215.]

2. APPEAL AND ERROR ☞1180—STAY PENDING APPEAL—EXECUTION OF DEED —REVERSAL—EFFECT.

Where, in a suit to enforce an alleged trust, the defendant, in order to stay execution of an adverse judgment requiring him to convey an undivided half·of the land to each of two persons, executed a deed as required and deposited·it with the clerk of the court according to Code Civ. Proc. Cal. § 944, the deed never having been delivered, but remaining in the possession of the clerk until the judgment appealed from was reversed such reversal vacated the deed.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4626 - 4631, 4658, 4659; Dec. Dig. ☞1180.]

3. MORTGAGES ☞217—TRUST DEED—EFFECT.

The grantor of a deed of trust to secure an indebtedness only is still the beneficial owner of the property and may still maintain any necessary action dealing with the title, so that in a suit by him affecting the title the court acquires jurisdiction of the subject-matter.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 559–562; Dec. Dig. ☞217.]

4. JUDICIAL SALES ☞50—EFFECT—RIGHTS OF PURCHASER.

Where judgment was rendered imposing a lien on certain real property for an indebtedness due from D. to intestate, and in February, 1906, an order of sale was entered on the judgment and the land was sold by a commissioner to the administratrix and conveyed to her, such judgment and sale disposed of the question of title to the land as between the administratrix and the grantees of B., after which they had no interest in the land and were not concerned in the act or manner in which the administratrix discharged a prior lien on the land to secure money borrowed by the intestate with B.'s consent and credited on his indebtedness.

[Ed. Note.—For other cases, see Judicial Sales, Cent. Dig. §§ 90–94, 96; Dec. Dig. ☞50.]

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Frank H. Rudkin, Judge.

Suit by the United States Oil & Land Company against Teresa Bell, as administratrix of the estate of Thomas Bell, deceased, with

the will annexed, and others. Bill dismissed, and complainant appeals. Affirmed.

Thomas Bell, the uncle of John S. Bell, gave to the latter, in 1874, 14,000 acres of land in Santa Barbara county, Cal. Thomas thereafter loaned money to John until, in 1885, the latter's indebtedness to Thomas was over $50,000. Upon a settlement then had, John reconveyed to Thomas 4,000 acres of the land. Thomas continued to advance money to John, and debited him with the amounts advanced, and charged him interest. In 1887 John and Thomas united in a sale of both tracts to one Grover, who paid one-fifth in cash, and gave notes for the balance. John's portion of the cash payment was applied on his indebtedness, leaving a balance of $25,500 due to Thomas, to secure the payment of which Thomas was, by agreement, to hold Grover's notes. On Grover's failure to pay his notes, and upon the agreement of John and Thomas to release him from his obligation thereon, he reconveyed both tracts of land in 1889 to George Staacke, who was the bookkeeper and confidential agent of Thomas. John continued to draw upon Thomas until the close of 1891, when his indebtedness to Thomas was over $100,000. In February, 1892, Thomas wrote John that it was inconvenient for him to be out of the use of the large sum of money which John owed him, and that he had borrowed $60,000 of the San Francisco Savings Union on the security of both tracts of land. The $60,000 so borrowed was placed to the credit of John. Staacke made his note to the savings union, and Thomas indorsed it, and to secure its payment Staacke conveyed, by deed of trust, both tracts of land to Campbell and Kent as trustees for the savings union. John continued to draw upon Thomas until the latter's death in October, 1892, when the balance he owed Thomas was more than $52,000.

Shortly after the death of Thomas, John presented to the executors of the will of Thomas a claim against the estate to the effect that Thomas had agreed to hold and manage John's 10,000-acre tract, to receive all the rents and profits thereof until an expected railroad through the land should be completed, or until a sale of the land could be had, and to pay him (John) the sum of $360 each month, independent of the rents and profits of said land, and that both said land and the rents and profits should be charged with the payment of said monthly sum. The executors rejected this claim, and in March, 1893, John began the suit of John S. Bell v. George Staacke et al. in the superior court of Santa Barbara county, to enforce his claim, making the executors also parties defendant. The complaint in that action alleged that Staacke held the 10,000 acres in trust for John and in trust for Thomas Bell, according to his beneficial interest; that the monthly payments of $360 were a lien and charge upon the land and by agreement were to be advanced by Thomas to John, to be reimbursed to Thomas out of the proceeds of the sale of the land. The defendants in that action denied that Thomas ever made any such agreement, and they filed a cross-complaint, alleging the fact to be that John's 10,000 acres were held in the name of Staacke in trust for the payment of John's indebtedness to Thomas, and they demanded judgment against John for the payments due, and a decree for the sale of John's 10,000 acres, and the application of the proceeds of the sale to the payment thereof. Nothing further was done in that action until four years later. In December, 1896, John conveyed the 10,000-acre tract to his wife, Kate M. Bell, and in 1897 he and his wife joined in a conveyance of an undivided one-half thereof to James L. Crittenden, John's attorney. In June, 1897, an amended and supplemental complaint was filed in the action, changing the object and purpose thereof. That complaint alleged that Staacke held the 10,000-acre tract solely in trust for John, and to convey to John on demand, and denied that John was indebted to Thomas in any amount, and prayed that Staacke be compelled to convey the land to the plaintiffs. The complaint also alleged that Staacke had, in violation of his trust, borrowed $60,000 from the San Francisco Savings Union, and conveyed the land to the trustees, and that he and Thomas Bell had appropriated to their own use the money so borrowed. Neither the trustees nor the savings union were made parties defendant.

On these issues, the cause of Bell v. Staacke was tried before Judge Day in June, 1897. The judge filed a written opinion in favor of the executors on their cross-complaint. There was some delay on the part of the defendants to have the findings and decision entered. Thereafter, on the motion of plaintiff, the judge vacated the submission and ordered a new trial. Proceedings were had in the meantime by which Teresa Bell, the widow of Thomas Bell, was appointed special administratrix of Thomas Bell's estate, and thereafter she became administratrix with the will annexed. In June, 1900, she having been substituted as defendant in the place of Staacke, the cause was a second time tried before Judge Day. At the conclusion of that trial, the judge decided that Staacke had held the 10,000-acre tract solely in trust for John, and to convey the same to him on demand free from any lien or claim in favor of Thomas. The findings were made and filed on March 6, 1901. Judgment was rendered July 9, 1901, directing Staacke to convey to Catherine M. Bell and James L. Crittenden each an undivided one-half of the 10,000-acre tract, and in the same judgment it was found that John was indebted personally to Thomas, at the date of the latter's death, in the sum of $52,120.15, and that the administratrix of Thomas' estate have judgment against John for that sum, with interest. The defendants moved for a new trial, and their motion was denied. They gave notice of an appeal to the Supreme Court from the order denying their motion for a new trial, and also from all of the judgment except that part which adjudged that John was indebted to Thomas. On taking the appeal, Staacke duly signed and acknowledged a deed to Kate M. Bell and James L. Crittenden each of an undivided one-half of the 10,000-acre tract of land, and deposited it with the clerk of the court; its delivery to abide the decision of the Supreme Court on the appeal. There was a motion to dismiss both appeals. The Supreme Court granted the motion as to the appeal from the judgment, on the ground that the appeal was premature in that it was taken before the judgment had been copied into the judgment book, but denied the motion to dismiss the appeal from the order denying the motion for a new trial. Bell v. Staacke, 137 Cal. 307, 70 Pac. 171. The Supreme Court reviewed the evidence in the case, and ordered a new trial as to all of the issues except that involving the amount of the indebtedness of John. Bell v. Staacke, 141 Cal. 186, 74 Pac. 774. The action came on for trial in the superior court the third time in April, 1904, before Judge Taggart. Findings were made in favor of the administratrix of Thomas Bell on the cross-complaint, and judgment was entered on October 28, 1904, adjudging that a lien existed in favor of Thomas Bell's estate upon the 10,000-acre tract, for payment of John's indebtedness, which at that time, with interest, was $95,901, and it was ordered that the land be sold to pay such indebtedness. The plaintiffs made a motion for a new trial, which was denied, and an appeal was taken to the Supreme Court from the judgment and from the order denying a new trial. The appeal from the judgment was dismissed, and, on the appeal from the order denying a new trial, the judgment was affirmed. Bell v. Staacke, 151 Cal. 544, 91 Pac. 322. In pursuance of the judgment, the land was sold, and Teresa Bell, as administratrix of Thomas Bell's estate, became the purchaser; she bidding therefor $109,000, the total amount of John's debt with interest and costs. Upon the expiration of the time for redemption, Teresa Bell, as administratrix, received a deed to the 10,000 acres.

In the meantime, in August, 1898, and after the first trial of the case of Bell v. Staacke, Kate M. Bell and James L. Crittenden brought a suit against the San Francisco Savings Union and Pond and Kent, who were at that time the trustees in the deed of trust, and against the executors of Thomas Bell's estate and the heirs of Thomas Bell, alleging facts similar to those alleged in the complaint of Bell v. Staacke, and praying that it be adjudged that the defendants had no interest or estate in said land, but that the land belonged to the plaintiffs, and that it be adjudged that the land had been deeded to Staacke in trust to convey the same to John as owner thereof, that Staacke received the naked legal title in trust for John, to convey the same to him, and that Staacke had no power to borrow the $60,000 or to make said deed of trust. The defendants, the San Francisco Savings Union, and the trustees

of the trust deed in that suit alleged that, at the time when Staacke borrowed the $60,00 and made the note and deed to secure the same, they had no knowledge or information that John had any claim or interest in the 10,000-acre tract, and never received notice of such claim or interest until four years later, when John and the executors of the Thomas Bell estate applied to the savings union for an extension of the time of payment on the note. They alleged, also, that on December 22, 1896, an agreement in writing had been made between the savings union, as party of the first part, and John S. Bell, as party of the second part, and Staacke, as party of the third part, and the executors of the will of Thomas, whereby the time for payment of the principal of said promissory note of Staacke was extended until December 22, 1898; that the agreement before its execution was submitted for examination to, and approved by, John and his attorneys, and was executed by John on the advice of his attorneys. Nothing further was done in that suit until March 29, 1902, when Teresa Bell, as administratrix, filed an amendment and supplement to the answer of the executors, alleging the same matters in substance that were pleaded in the cross-complaint of the defendants in Bell v. Staacke, and she alleged the pendency in the same court of the action of Bell v. Staacke, and that on June 29, 1901, judgment in that action had been made and entered in favor of herself as administratrix upon her cross-complaint, and against John, for the sum of $52,120, with interest and costs, and that said judgment was still in force, and the administratrix in her answer prayed that it be adjudged and decreed that Staacke held the legal title to the 10,000-acre tract in trust for the use and benefit of the administratrix of said estate as security for the payment of said sum of $52,120, with interest thereon, and in trust to sell said land and apply the proceeds to the payment of that judgment.

The action of Bell v. San Francisco Savings Union was brought to trial on June 13, 1904, before Judge Taggart, the judge who conducted the third trial of Bell v. Staacke, and while the latter case was under submission to the said judge. Teresa Bell, as administratrix, then filed a further amended answer, alleging the proceedings in Bell v. Staacke, and praying that the cause of Bell v. San Francisco Savings Union be abated until final determination of the other action. The court proceeded, however, and on February 20, 1905, made findings, and on March 14, 1905, rendered a decision in favor of the San Francisco Savings Union and the Mercantile Trust Company, which had been substituted as trustee, but holding and adjudging that Teresa Bell as administratrix was entitled to have the 10,000-acre tract offered for sale first, by the trustee, the Mercantile Trust Company, and it was expressly found in the decree that in the case of Bell v. Staacke, which was then pending, all questions of the relations between John S. Bell and his grantees on the one hand, with Staacke and the estate of Thomas Bell on the other, "are in course of judicial determination and settlement therein." The decree therefore made no adjudication of the rights between those parties, leaving the question of their rights to be determined by the decision in Bell v. Staacke. After receiving her deed from the commissioner, Teresa Bell paid to the trustee for the savings union the amount due it.

On March 2, 1912, the United States Oil & Land Company, a corporation of Arizona, the appellant herein, claiming to be the owner of an undivided one-half interest in the 10,000-acre tract by conveyance from James L. Crittenden and wife, brought in the court below the present suit against Teresa Bell, as administratrix, and numerous other defendants, to quiet the complainant's title to an undivided one-half of said tract, to set aside the conveyance to Teresa M. Bell of May 26, 1908, to obtain a decree that she as administratrix execute to the complainant a good and sufficient deed of conveyance of an undivided one-half of said tract, and that the other defendants execute deeds likewise of said tract, and for other relief incident to the cause of suit alleged. In the bill it was alleged that the conveyance made by Staacke to Kate M. Bell and James L. Crittenden on July 8, 1901, and delivered to the clerk of the court, became and was an absolute grant and conveyance of the title in fee in and to said tract to the said grantees and vested in each of them an undivided one-half of said lands, and that the conveyance be-

came final on or about December 29, 1901, and one of the prayers of the bill was that the clerk of the superior court of Santa Barbara county deliver to the county recorder of that county the said deed for record in the records of that county.

Upon the answers of the defendants to the bill setting up the proceedings in the actions in Bell v. Staacke and Bell v. San Francisco Savings Union, the substance of which is contained in the foregoing statement of the facts, and upon the stipulation of counsel that the papers purporting to be copies of judgments, orders, and decrees claimed to have been rendered and entered in the said causes in the state courts are substantially correct copies thereof, the cause was submitted for decision upon the pleadings, and thereupon it was ordered that the bill of complaint be dismissed and that the defendants recover from the complainant their costs.

Richards & Carrier, of Santa Barbara, Cal., and James L. Crittenden, of San Francisco, Cal. (Jacob M. Blake, of San Francisco, Cal., of counsel), for appellant.

Charles W. Slack and Chauncey S. Goodrich, both of San Francisco, Cal., for appellees W. P. Hammon and F. C. Van Deinse.

T. Z. Blakeman, of San Francisco, Cal., for appellees Teresa Bell as administratrix and others.

Peter J. Crosby, of Oakland, Cal., for appellees Eustace Bell and others.

Lewis W. Andrews, Thos. O. Toland, and Andrews, Toland & Andrews, all of Los Angeles, Cal., for appellee Union Oil Co. of California.

Edmund Tauszky, of San Francisco, Cal., for Associated Oil Co.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). The appellant bases its right to the relief sought in the bill primarily upon the decree rendered in favor of Bell on the second trial of the case of Bell v. Staacke in the superior court of Santa Barbara county, and upon the deed which Staacke deposited with the clerk of that court in order to effect a stay of the proceedings pending the appeal from the judgment in that case, and contends that, notwithstanding the fact that the decree so appealed from was vacated by the Supreme Court and that upon the new trial ordered by that court all the issues were found against the appellant's predecessors in interest, the decree upon the third trial and the proceedings had thereunder were of no binding force for the reasons: First, that, after dismissing the appeal from the final judgment, the Supreme Court had no jurisdiction to award a new trial; second, that at that time the legal title to the land in controversy was vested in the trustees of the San Francisco Savings Union, and the equitable title was vested in that corporation, and therefore the superior court had no jurisdiction to deal with the subject-matter of the suit; and, third, that the decree in Bell v. San Francisco Savings Union was later in point of time than the decree in Bell v. Staacke, is inconsistent therewith, and protects the rights of the appellant.

[1] The contention that the Supreme Court had no jurisdiction to grant a new trial in the case of Bell v. Staacke is based upon the proposition that the notice of intention to move for a new trial which

was filed in the superior court was premature and ineffectual for any purpose. This question was definitely ruled and adjudged by the Supreme Court of California adversely to the appellant's contention, in Bell v. Staacke, 137 Cal. 307, 70 Pac. 171. When that case was in the Supreme Court on a motion to dismiss the appeal from the order denying a new trial, that court said:

"The premature service of a notice of intention to move for a new trial, or a failure to serve such notice at all, might be a good reason for denying the motion, but does not deprive this court of jurisdiction to hear the appeal; nor does it constitute a reason for its dismissal upon the ground that the court has not jurisdiction to hear it. Matters occurring prior to the order appealed from cannot be considered on the motion to dismiss an appeal."

And the court sustained that doctrine by reference to a line of its own decisions. Again, in Bell v. Staacke, 141 Cal. 186, 74 Pac. 774, when the appeal from the order of the superior court denying the motion for a new trial came on to be heard on its merits in the Supreme Court, that court, in dealing with the express objection which is here urged, namely, that the notice of intention to move for a new trial was prematurely given, said:

"There is nothing in this point. The findings and conclusions of law were filed March 6, 1901, in due time, and on March 19, 1901, defendants gave their notice of intention to move for a new trial. Some two months afterwards the judge of the lower court, on his own motion, and reciting that such findings had been inadvertently omitted, made and filed two additional findings upon two issues raised by the plaintiff's answer to defendants' cross-complaint. * * * These were in no way connected with the findings upon which the decree in favor of plaintiff was founded, and neither party attacks them, nor has either party appealed from, or questioned, this part of the decree."

And again, in Bell v. Staacke, 151 Cal. 544, 91 Pac. 322, when the appeal from the judgment of the superior court on the third trial of the action was heard, the same question was again presented to the Supreme Court, and that court said:

"A claim that the superior court had no jurisdiction to retry this case, notwithstanding that it was remanded by this court for a new trial, is based on the fact that the appeal from the former judgment in favor of plaintiff was dismissed. This, it is said, constituted an affirmance of the judgment, preventing the subsequent giving of any other judgment. But a judgment, even although expressly affirmed on appeal, is vacated by an order granting a new trial. See Swett v. Gray, 141 Cal. 83 [74 Pac. 551]."

The judgments in those cases are res judicata and are conclusively binding upon the appellant in this collateral attack thereon. They leave no room for the application of the principles announced in Muhlker v. Harlem Railroad Co., 197 U. S. 544, 25 Sup. Ct. 522, 49 L. Ed. 872, and Kuhn v. Fairmont Coal Co., 215 U. S. 349, 30 Sup. Ct. 140, 54 L. Ed. 228, cited and relied upon by the appellant.

[2] As to the deed made by Staacke on July 8, 1901, and delivered to the clerk of the court, it is sufficient to point to the fact that the deed was so made and deposited solely for the purpose of procuring a stay on Staacke's appeal, as required by the provisions of section 944 of the Code of Civil Procedure, and that the deed was never de-

livered, but remained in the possession of the clerk until the judgment appealed from was vacated. When that was done, the deed became a nullity. Di Nola v. Allison, 143 Cal. 106, 76 Pac. 976, 65 L. R. A. 419, 101 Am. St. Rep. 84.

[3] We find no merit in the contention that in all the phases of the litigation in Bell v. Staacke, both in the superior and the Supreme Courts, there was no jurisdiction of the res, and no subject-matter of the suit, for the reason that the legal title to the land stood in the trustees and the equitable title in the San Francisco Savings Union. This proposition is advanced, notwithstanding that John S. Bell began the action in Bell v. Staacke against Staacke and the executors of Thomas Bell, for the purpose of establishing his right and interest in the 10,000-acre tract in controversy, and omitted to bring into the controversy the San Francisco Savings Union or the trustees of the deed of trust. If this contention were sustained, the appellant would thereby be deprived of the title which it claims by virtue of the judgment of June 29, 1901, in Bell v. Staacke, and upon which it bases its right to the relief sought by the bill, and would also be deprived of its claim to title by virtue of the deed made by Staacke and deposited with the clerk of the court, for the appellant, to obtain the relief sought, must allege and prove a superior right and title in itself. In Williams v. City of San Pedro, 153 Cal. 44, 49, 94 Pac. 234, 236, it was said:

"If he has no title, he cannot complain that some one else, also without title, asserts an interest in the land."

But the contention involves a misconception of the effect of the trust deed. The conveyance by Staacke to the trustees, although in form a trust deed, was in law a conveyance given to secure an indebtedness. The grantor was still the beneficial owner, and could maintain any necessary action dealing with the title. That such is the effect of such an instrument is settled by the decisions of the state of California. Kennedy v. Nunan, 52 Cal. 326; King v. Gotz, 70 Cal. 236, 11 Pac. 656; Brown v. Campbell, 100 Cal. 635, 35 Pac. 433, 38 Am. St. Rep. 314.

In Sacramento Bank v. Alcorn, 121 Cal. 379, 53 Pac. 813, the court said:

"Under these decisions and statutes, it would seem that, while we must say that the title passes, none of the incidents of ownership attach, except that the trustees are deemed to have such estate as will enable them to convey."

In Herbert Craft Co. v. Bryan (Cal.) 68 Pac. 1020, the court said:

"The passing of the legal title in such case is mostly ideal. It is deemed to have passed only for the purpose of enabling the trustee to convey a title. In all other respects the title remains in the trustor."

In Tyler v. Currier, 147 Cal. 31, 81 Pac. 319, the court said:

"While the deed of trust in one sense passed the title, yet it did so only for the purpose of security, and was, except as to the form and the procedure by which the loan could be enforced, substantially a mortgage."

Again, in MacLeod v. Moran, 153 Cal. 97, 94 Pac. 604, the court said:

"These decisions are based upon the fact that such a deed, though in form a grant, is really only a mortgage, and does not convey the fee. A trust deed of the kind here involved differs from such a deed only in that it conveys the legal title to the trustees so far as may be necessary to the execution of the trust. It carriers none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in the payment of his debt. The nature of such an instrument has been extensively discussed by this court, and the sum and substance of such discussion is that while the legal title passes thereunder, and the trustees cannot be held to hold a mere 'lien' on the property, it is practically and substantially only a mortgage with power of sale. * * * The legal estate thus left in the trustor or his successors entitles them to the possession of the property until their rights have been fully divested by a conveyance made by the trustees in the lawful execution of their trust, and entitles them to exercise all the ordinary incidents of ownership in regard to the property, subject always, of course, to the execution of the trust. This estate is a sufficient basis for a valid claim of homestead."

See, also, C. A. Warren Co. v. All Persons, etc., 153 Cal. 771, 96 Pac. 807.

The appellant asserts that rights in its favor were adjudged in the decree in Bell v. San Francisco Savings Union, and that the decree therein finally and conclusively determined the rights of all parties who were involved in the litigation in Bell v. Staacke, and determined the status of the savings union and its trustees as purchasers for value and without notice. The action in that case was commenced for the purpose of obtaining a decree that the deed of trust was void as against John S. Bell and his successors in interest. That relief was denied, the deed was held valid, and the Mercantile Trust Company, as trustee, was directed to sell the 10,000-acre tract, to pay to the savings union $158,000 out of the proceeds, and to pay the balance, if any, to Staacke, his heirs or assigns, and the decree adjudged that the plaintiffs therein "take nothing by this action." On the plaintiff's appeal, the judgment was affirmed. The appellant, however, claims an advantage to itself in the fact that the judgment in the Savings Union Case was later than that in Bell v. Staacke, and therefore controlling. But the relative priority in time of the judgments is wholly unimportant. Judgment was entered in Bell v. Staacke on October 17, 1904, and judgment was entered in the Savings Union Case on March 14, 1905; but both cases were pending at the same time in the same court, and before the same judge, and the judgment in the latter case expressly referred to the pendency of the litigation in the former case, and left for adjudication the questions therein involved. It is impossible to see that the appellant's predecessors in interest obtained anything by either decree. In the San Francisco Savings Union Case, the rights of Thomas Bell in the land held by Staacke were expressly recognized. In the opinion on the appeal in that case (153 Cal. 74, 94 Pac. 225) the court said:

"In the foregoing discussion we have said nothing as to the contention of the appellants Crittenden and United States Oil & Land Company that the court erred in denying them any priority as against the estate of Thomas

Bell. It is found, however, that the action of Bell v. Staacke, the pendency of which was set up in the pleadings, was still pending at the time of the decision, and that the question of the relations between John S. Bell and his grantees on the one hand, with Staacke and the estate of Thomas Bell on the other, in respect of the indebtedness of John S. to Thomas Bell and of the 10-000-acre tract, are involved in said action and 'are in course of judicial determination and settlement therein.' But judgment, accordingly, made no adjudication of the rights of John S. Bell and Thomas Bell (or their successors) as between each other, leaving the question of those rights to be determined in Bell v. Staacke. If it could be said that Staacke had no interest in this controversy as to priorities between John S. Bell and Thomas Bell, the finding as to the pending action (which is not attacked) clearly made it the duty of the court to reserve for adjudication in that action the matters therein involved."

But the appellant urges that, in any view of the facts of the case, Teresa Bell as administratrix is an involuntary trustee for the appellant of an undivided one-half interest in the land in controversy under the terms of the trust created in Staacke by the deed from Grover, and that this trust was revived in her whether she obtained the legal and equitable title which Staacke had when he conveyed to the trustees, or whether that conveyance be considered void and her payment of the debt due the savings union be deemed the voluntary act of one who was jointly liable to pay the same; that in either case she occupies toward the land in question the position of one who, with notice of the trust, has again received the title thereto after it once passed into the hands of a bona fide purchaser. This contention ignores the important and salient facts of the litigation.

[4] In February, 1906, an order of sale on the judgment in Bell v. Staacke was issued out of the superior court of Santa Barbara county. A month later the commissioner sold the 10,000-acre tract in controversy under that judgment to Teresa Bell, as administratrix, and thereafter be executed a deed to her. That judgment and sale disposed of the question of the title as between Teresa Bell, administratrix, and the grantees of John S. Bell. The latter, having thereafter no interest in the land, were not concerned in the method of the payment and discharge of the lien of the savings union. Teresa Bell, being the owner of the land, had the right to pay, as she did, the amount due the savings union, and discharge the property of the lien and prevent a sale thereof to satisfy the judgment rendered in favor of the savings union. By that act the grantees of John S. Bell acquired no equities in the property. They could have obtained no advantage from a sale of the land. The appellant's bill can be sustained only on the untenable theory that the final judgment in Bell v. Staacke is a nullity. In brief, the appellant comes into a court of another jurisdiction and asks it, in a collateral attack upon the judgment of the Supreme Court of the state of California, to decide that that court either misconstrued or erred in applying its own laws and rules of practice. As was said in Michigan Trust Co. v. Ferry, 228 U. S. 346, 354, 33 Sup. Ct. 550, 552 (57 L. Ed. 867):

"It is a strong thing for another tribunal to say that the local court did not know its own business under its own laws."

The grantors of the appellant have had their day in court. The propositions on which the appellant bases its claim to relief have been adjudged against it, and its bill is without equity.

The decree is affirmed.